STATE OF IOWA, Appellant, v. N. F. STRAYER, Appellee.

No. 45503.

SEPTEMBER 23, 1941.

REHEARING DENIED FEBRUARY 13, 1942.

John M. Rankin, Attorney General, Jens Grothe, Assistant Attorney General, Francis J. Kuble, County Attorney, Walter W. Selvy, Assistant County Attorney, and James P. Irish, Assistant County Attorney, for appellant.

H. W. Hanson, for appellee.

HALE, J.—The defendant was the operator of a farm in Four Mile township, Polk county, and engaged in raising hogs, feeding them garbage obtained from various sources and deposited upon his land. On April 17, 1940, the board of health of that township, without notice having been served upon the defendant, found that a nuisance existed by reason of the dumping of said garbage, and ordered the removal of such nuisance from the premises occupied by him. It is alleged that defendant failed to comply with the order. Information was filed in the municipal court of Des Moines, on June 17, 1940, charging that the defendant, on April 17, 1940, violated chapter 107 of the 1939 Code of Iowa, by hauling garbage to his place in Four Mile township in violation of the order served on him by the board of health of that township on April 17, 1940. To this information defendant pleaded not guilty, and later, on July 1, 1940, filed a demurrer to the information, which was sustained by the court and the case dismissed. The State appeals.

The demurrer is quite lengthy, consisting of nineteen paragraphs, and need not be set out in full. The court entered its findings in the order of dismissal, finding the facts as to notice as above set out. The substance of the court's findings as to the law is summarized as follows: (1) That the statute is in contravention of the due-process clauses of the constitution of the state of Iowa and the constitution of the United States; (2) that it is not a crime per se to haul garbage to designated premises; and (3) that the statute constitutes a delegation of legislative power.

Is the statute unconstitutional as operating to deprive the defendant of his property without due process of law? Chapter

107 of the Code provides for the organization of boards of health, and their powers and duties. Section 2240 of said chapter is as follows:

"The local board may order the owner, occupant, or person in charge of any property, building, or other place, to remove at his own expense any nuisance, source of filth, or cause of sickness found thereon, by serving on said person a written notice, stating some reasonable time within which such removal shall be made, and if such person fails to comply with said order, the local board may cause the same to be executed at the expense of the owner or occupant."

No complaint is made as to the form of the order. Section 2246 of said chapter 107 is as follows:

"Any person who knowingly violates any provision of this chapter, or of the rules of the local board, or any lawful order, written or oral, of said board, or of its officers or authorized agents, shall be guilty of a misdemeanor."

I. The State, in denying that these provisions are unconstitutional, calls attention first to the presumption in favor of the constitutionality of an act passed by the legislature, citing Loftus v. Department of Agriculture, 211 Iowa 566, 232 N. W. 412 (appeal dismissed 283 U. S. 809, 51 S. Ct. 647, 75 L. Ed. 1427); City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 184 N. W. 823, 188 N. W. 921, 23 A. L. R. 1322; State v. Hutchinson Ice Cream Co., 168 Iowa 1, 147 N. W. 195, L. R. A. 1917B, 198 (affirmed 242 U. S. 153, 37 S. Ct. 28, 61 L. Ed. 217, Ann. Cas. 1917B, 643). And see, Miller v. Schuster, 227 Iowa 1005, 289 N. W. 702. This proposition defendant concedes, but alleges that such presumption may be overcome by a showing of clear violation of constitutional safeguards; citing Marbury v. Madison, 1 Cranch (5 U. S.) 137, 2 L. Ed. 60; and McGuire v. Chicago, B. & Q. R. Co., 131 Iowa 340, 108 N. W. 902, 33 L. R. A., N. S., 706. Neither of these propositions may be denied. The presumption exists, and undoubtedly it is the duty of the court to declare a clear, plain, and palpable violation of a constitutional right where there is no reasonable doubt as to such violation. There is no dispute here.

■ II. The State argues that the legislative enactment complained of, being in the interest of the public health, was reasonably within the police power of the State. Various authorities are cited. The case of ·Jacobson v. Massachusetts, 197 U. S. 11, 24, 25 S. Ct. 358, 360, 49 L. Ed. 643, 649, involves a statute requiring compulsory vaccination, and the court there says, relative to police power:

"The authority of the state to enact this statute is to be referred to what is commonly called the police power—a power which the State did not surrender when becoming a member of the Union under the Constitution. Although this court has refrained from any attempt to define the limits of that power, yet it has distinctly recognized the authority of a State to enact quarantine laws and 'health laws of every description;' indeed, all laws that relate to matters completely within its territory and which do not by their necessary operation affect the people of other States. According to settled principles the police power of a State must be held to embrace, at least, such reasonable regulations established directly by legislative enactment as will protect the public health and the public safety."

The United States Supreme Court says, in Lawton v. Steele, 152 U. S. 133, 136, 14 S. Ct. 499, 500, 38 L. Ed. 385, 388, a case relating to the summary seizing of certain fishing nets:

"The extent and limits of what is known as the police power have been a fruitful subject of discussion in the appellate courts of nearly every State in the Union. It is universally conceded to include everything essential to the public safety, health, and morals, and to justify the destruction or abatement, by summary proceedings, of whatever may be regarded as a public nuisance. Under this power it has been held that the State may order the destruction of a house falling to decay or otherwise endangering the lives of passersby; the demolition of such as are in the path of a conflagration; the slaughter of diseased cattle; the destruction of decayed or unwholesome food; the prohibition of wooden buildings in cities; the regulation of railways and other means of public conveyance, and of interments in burial grounds; the restriction of objectionable

trades to certain localities; the compulsory vaccination of children; the confinement of the insane or those afflicted with contagious diseases; the restraint of vagrants, beggars, and habitual drunkards; the suppression of obscene publications and houses of ill fame; and the prohibition of gambling houses and places where intoxicating liquors are sold. Beyond this, however, the State may interfere wherever the public interests demand it, and in this particular a large discretion is necessarily vested in the legislature to determine, not only what the interests of the public require, but what measures are necessary for the protection of such interests. Barbier v. Connolly, 113 U. S. 27 [5 S. Ct. 358, 28 L. Ed. 923]; Kidd v. Pearson, 128 U. S. 1 [9 S. Ct. 6, 32 L. Ed. 346]. To justify the State in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police powers is not final or conclusive, but is subject to the supervision of the courts.''

Our own court, in reviewing the provisions of the statute enacted for the control and eradication of bovine tuberculosis, has ruled that such statute is a valid exercise of the police power of the State. See Loftus v. Department of Agriculture, supra, and authorities cited on page 573, 211 Iowa, 232 N. W., page 416. To the same effect, see the pronouncement of the court in Holden v. Hardy, 169 U. S. 366, 392, 18 S. Ct. 383, 388, 42 L. Ed. 780, 791, wherein the court says:

''* * * the police power cannot be put forward as an excuse for oppressive and unjust legislation, it may be lawfully resorted to for the purpose of preserving the public health, safety or morals, or the abatement of public nuisances, and a large discretion 'is necessarily vested in the legislature to determine not only what the interests of the public require, but

what measures are necessary for the protection of such interests.' ''

In the case of McGuire v. Chicago, B. & Q. R. Co., supra, the court, in discussing police power, while holding that it is the duty of courts to keep within the constitutional limits of their jurisdiction, states [131 Iowa 340, 356, 108 N. W. 902, 907]:

"It is a settled proposition that the fourteenth amendment to the federal Constitution was not intended to limit or hamper the states in the exercise of their police powers. Mugler v. Kansas, 123 U. S. 623 (8 Sup. Ct. 273, 31 L. Ed. 205); In re Kennler, 136 U. S. 436 (10 Sup. Ct. 930, 34 L. Ed. 519); Ex parte Converse, 137 U. S. 624 (11 Sup. Ct. 191, 34 L. Ed. 796); Powell v. Pennsylvania, 127 U. S. 678 (8 Sup. Ct. 992, 1257, 32 L. Ed. 253)."

See also, Peverill v. Board of Supervisors, 208 Iowa 94, 222 N. W. 535; Fevold v. Board of Supervisors, 202 Iowa 1019, 210 N. W. 139.

III. The defendant insists that such enactments, like other acts, are subject to the constitutional provisions—a statement that cannot be successfully refuted. Defendant cites State v. Osborne, 171 Iowa 678, 154 N. W. 294, Ann. Cas. 1917E, 497, a case relating to the licensing of transient merchants; State v. Manhattan Oil Co., 199 Iowa 1213, 203 N. W. 301, which concerns an act of the legislature alleged to be defective; Solberg v. Davenport, 211 Iowa 612, 232 N. W. 477, relating to the binding power of an act of one legislature upon a subsequent legislature; and Edwards & Browne Coal Co. v. Sioux City, 213 Iowa 1027, 240 N. W. 711, relating to a city ordinance regulating the keeping for sale of inflammable oils, etc., as not affording equal protection of the laws.

It is self-evident that any enactment of the legislature, to be valid, must be within the constitutional limits. The question then would be whether the enactment and enforcement of a statute such as the one under consideration are forbidden by the constitution of either the State or the United States. The court was confronted with such a statute in Loftus v. Department of Agriculture, supra. The holding was that the act was within

the police power of the State, citing the cases of Jacobson v. Massachusetts, supra, and Lawton v. Steele, supra. It was held in the Loftus case that in the exercise of such police power the provisions of the Bovine Tuberculosis Act were valid and not so arbitrary and unreasonable as to be unconstitutional as denying due process of law.

IV. Is the statute in controversy a delegation of legislative power? It is a health regulation and within the police power of the State. Without doubt the State cannot delegate to an administrative body its purely legislative power, as held in State v. Van Trump, 224 Iowa 504, 275 N. W. 569, and cases cited; and McLeland v. Marshall County, 199 Iowa 1232, 201 N. W. 401, 203 N. W. 1. But that it has power to delegate to administrative tribunals discretion to act, see Miller v. Schuster, supra [227 Iowa 1005, 1016, 289 N. W. 702, 707], where, in the opinion by Justice Miller, the court quotes as follows from the Van Trump case, supra:

" 'No government, embodying the principles of the separation of power could function if the legislature were prohibited from conferring power or authority of any character upon executive or administrative officials. The cases demonstrate that no such arbitrary prohibition is intended. In determining whether a statute authorizing the adoption of rules and regulations involved an unconstitutional delegation of legislative power, the issue is not whether any such authority has been delegated but rather is as to the nature of the authority involved. If it is "strictly and exclusively legislative" in character, it cannot be delegated. If it is not of that restricted character, it may be. When the legislature declares a general rule and prescribes the circumstances under which it shall apply but in such general terms as to require that authority be delegated to others "to fill up the details" by rule or regulation, the weight of authority is that the "strictly and exclusively legislative" power has not been delegated.' "

The above case also cites Hubbell v. Higgins, 148 Iowa 36, 43, 126 N. W. 914, 917, Ann. Cas. 1912B, 822, sustaining chapter 168 of the Acts of the Thirty-third General Assembly, providing for inspection of hotels. In that case the statute left to the in-

spector the determination of ''approved fireproof construction'' and ''approved sanitary conditions.'' It was held that there was no delegation of legislative power. The opinion also cites Brady v. Mattern, 125 Iowa 158, 169, 100 N. W. 358, 362, 106 Am. St. Rep. 291; and Noble v. English, 183 Iowa 893, 167 N. W. 629, granting to the commissioner of insurance a certain discretion in the regulation and control of agents; and also Lloyd v. Ramsay, 192 Iowa 103, 183 N. W. 333. See the above Miller case, and cases therein cited on page 1019, 227 Iowa, 289 N. W., page 709. We think the rule in such cases is, that the legislature may delegate to an administrative tribunal power to find facts and prescribe rules not inconsistent with the law. In the absence of such right, as pointed out, the enforcement of acts involving the public health, as well as many others, would be impossible. Somebody must be charged with the duty of inspection and of determination, and, especially as to health regulations, the right of the public to be protected against matters detrimental or injurious ordinarily must be determined immediately and cannot await the slow processes of the law.

V. Holding as we do that the statute under consideration is a valid exercise of the police power of the State, and is not a delegation of the legislative power in permitting the local board to pass upon the question of whether or not a certain condition constitutes a nuisance or is detrimental to the health of the community, there remains the question urgently argued by the defendant, as to the right of the local board, without notice or opportunity for hearing, to declare the premises a nuisance and order its abatement.

The contention of the defendant is that an ex parte determination of facts as to a nuisance which is not such per se is denial of due process. It is conceded that the first finding of the board as to the depositing of garbage was without notice. Defendant insists that he should, prior to such finding, have been afforded an opportunity to be heard, by due notice; and in support of his proposition he cites a number of decisions of various courts, including Waud v. Crawford, 160 Iowa 432, 141 N. W. 1041, involving the killing of a crippled horse by a police officer, a civil action for damages. An examination of the case shows that the horse was not so destroyed on account of the

public safety, but on account of the injury to the animal itself. We do not think the case applies to the case at bar. Other cases cited by defendant we think do not sustain his contention. Roller v. Holly, 176 U. S. 398, 20 S. Ct. 410, 44 L. Ed. 520, was a civil action in which a five-days' notice was held insufficient where a plaintiff was sued in Texas and the notice was served on him in Virginia. Coe v. Armour Fertilizer Works, 237 U. S. 413, 35 S. Ct. 625, 59 L. Ed. 1027, involved the sale of land under execution, without notice, and the circuit court, in entering judgment, said that the execution should be quashed but not upon the grounds of unconstitutionality of the statute, that the execution could not issue until some preliminary steps were taken. State ex rel. Hurwitz v. North, 271 U. S. 40, 42, 46 S. Ct. 384, 385, 70 L. Ed. 818, 821, involved the revocation of a physician's license to practice. In this case the opinion states:

"It has been so often pointed out in the opinions of this court that the 14th Amendment is concerned with the substance and not with the forms of procedure, as to make unnecessary any extended discussion of the question here presented. The due process clause does not guarantee to a citizen of a state any particular form or method of state procedure. Its requirements are satisfied if he has reasonable notice, and reasonable opportunity to be heard and to present his claim or defense, due regard being had to the nature of the proceedings * * *." The judgment was affirmed.

In Powell v. Alabama, 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527, there was a denial of counsel and the case had nothing to do with notice. None of the other cases cited by defendant we think supports his claim.

The question of notice is discussed in the Loftus case above cited [211 Iowa 566, 576, 232 N. W. 412, 417]. In that case, it is first held that the statute was within the police power of the State, and further, that the test was not so arbitrary or unreasonable as to permit the courts to interfere with the legislature's prerogative in that regard; the opinion then states:

"Under those circumstances, the legislation cannot be declared unconstitutional unless the enforcement of the act is so

arbitrary and unreasonable as to deny the appellees due process of law. Claim is made by appellees that the machinery of the law does deny due process. Basis for this assertion is founded upon the thought that there is no appeal from the finding of the tester, who, representing the state department, goes among the herds and applies the tuberculin test. Without an appeal from the conclusion of this agent to what appellees term 'an impartial or judicial tribunal,' appellees say due process of law has been denied them. Obviously they are not correct in this. If the animal in fact is tubercular, and therefore, under the Iowa statutes, a nuisance, it may be quarantined or summarily slaughtered. Protection to the health of mankind cannot be accomplished otherwise. Long delayed court or other procedures would furnish an opportunity for the tubercular germ to infect children and others. Summary action in the premises is essential. Otherwise the government cannot be effective enough to protect its inhabitants against tuberculosis or other plagues. It being assumed that appellees' cattle are infected with tuberculosis, due process of law is not denied by a summary quarantine, or even destruction of the animals.''

The opinion cites and quotes from Jacobson v. Massachusetts, supra; and further cites Fevold v. Board of Supervisors, supra; Peverill v. Board of Supervisors, supra; Kroplin v. Truax, 119 Ohio St. 610, 165 N. E. 498; People v. Teuscher, 129 Misc. 94, 221 N. Y. S. 20; Arbuckle v. Pflaeging, 20 Wyo. 351, 123 P. 918. There is further cited the case of North American C. S. Co. v. City of Chicago, 211 U. S. 306, 315, 29 S. Ct. 101, 104, 53 L. Ed. 195, 199, 15 Ann. Cas. 276, where it is said:

''We are of opinion * * * that provision for a hearing before seizure and condemnation and destruction of food which is unwholesome and unfit for use, is not necessary. The right to so seize is based upon the right and duty of the State to protect and guard, as far as possible, the lives and health of its inhabitants, and that it is proper to provide that food which is unfit for human consumption should be summarily seized and destroyed to prevent the danger which would arise from eating it.''

The case of Peverill v. Board of Supervisors, supra [208

Iowa 94, 107, 222 N. W. 535, 541], considers the provisions as to due process, and, in the language of the opinion:

"This presents the question of where the legislature enacts a statute under the police power, and whether, in so doing, it is bound by the rule of due process to the extent of requiring the provisions for notice and opportunity to be heard."

An extended discussion, which we need not repeat or summarize, is found in this opinion on the question: Is the due-process rule a limitation on the right to exercise the police power? The conclusion drawn in this case is that the due-process rule is not a limitation upon the right of the State to exercise its police power unless there is an improper use of such power, and the court holds that the exercise of the police power of the State by reason of the enactment of the law referred to is not arbitrary or unreasonable. See also, Fevold v. Board of Supervisors, supra, and also 25 I. L. R., No. 3, pages 462–469.

In the case at bar the defendant is not without remedy. If he fails to comply with the order and is made the subject of criminal prosecution, he has his day in court in such proceeding, on the question whether the dumping of garbage on his farm constitutes a nuisance. Nothing in the statute grants to the officers immunity from the consequences of unfair or oppressive acts. See Fevold v. Board of Supervisors, supra, and Loftus v. Department of Agriculture, supra. The particular form of procedure prescribed may vary from the customary procedure, but essential rights are not violated by granting to the board the right, in an emergency, to proceed in the abatement of a nuisance detrimental to public health, and it is safe to say that most cases calling for action on the part of the board of health are matters requiring immediate attention.

While the courts have not been uniform in their holdings, we believe that the weight of authority, as well as reason and necessity, prescribe that in cases involving the public health, where prompt and efficient action is necessary, the State or its officers should not be subjected to the inevitable delays incident to a complete hearing before action may be taken. The enforcement of quarantine regulations to avoid the risk of an epidemic is a situation in point; and a public nuisance of the nature

claimed in this proceeding is also a menace, not only to comfort but to health. In such cases, so far as consistent with constitutional rights, the public interest should prevail against the interest of the individual.

Our holding as to the law, as set forth hereinbefore, renders it necessary that the ruling of the lower court sustaining the demurrer should be reversed. The case is, therefore, reversed.—Reversed.

BLISS, GARFIELD, OLIVER, STIGER, and WENNERSTRUM, JJ., concur.

SAGER and MITCHELL, JJ., dissent.