Roxie O. Lacy et al., d/b/a Lacy-Long Construction Company, appellants, v. City of Des Moines et al. (members of City Council) et al. (members of Coordinating Committee), appellees.

No. 50441.

622

FEBRUARY 6, 1962.

Ralph L. Powers and Russell Jordan, both of Des Moines, for appellants.

Leonard Abels, Anthony T. Renda and Leo Gross, all of Des Moines, for appellees.

SNELL, J.—This is an action at law, in trespass, against the City of Des Moines and Charles F. Iles, Reinhold Carlson, Florence Myers, Robert Conley and Frank McGowan, *as members of the City Council of the City of Des Moines;* Frank Price, Malcolm M. Dailey, James F. Speers, Wayne E. Ulm and Fred Heyer, *as members of the Coordinating Committee of the City of Des Moines.* (Emphasis supplied.) It should be kept in mind that defendants, other than the City, are sued in their capacity as public officials and not for acts committed as individuals. The action arose out of the action of the local board of health in declaring that buildings of plaintiffs constituted a nuisance and in causing them to be destroyed.

As said by Mr. Justice Harlan in Barr v. Matteo, 360 U. S.

564, 79 S. Ct. 1335, 3 L. Ed.2d 1434, we are called upon in this case to weigh in a particular context two considerations of high importance which now and again come into sharp conflict—on the one hand, the protection of the individual citizen against pecuniary damage caused by oppressive or malicious action on the part of officials of the government; and on the other, the protection of the public interest by shielding responsible governmental officers against the harassment and inevitable hazards of vindictive or ill-founded damage suits brought on account of action taken in the exercise of their official responsibilities.

Plaintiffs are owners of Lots one (1) through eleven (11) in Block Nine (9), City of Des Moines. Prior to annexation by Des Moines a few years ago, this property was part of Bloomfield Township.

Defendant City of Des Moines is a municipal corporation. During the times material herein, defendants Charles F. Iles, Reinhold Carlson, Florence Myers, Robert Conley and Frank McGowan were members of the City Council and ex officio members of the board of health. Frank Price, Malcolm M. Dailey, James F. Speers, Wayne E. Ulm and Fred Heyer were members of the coordinating committee of the City.

Plaintiffs purchased four frame buildings, formerly the mess hall at Fort Des Moines, and moved them to their property in 1957. They were placed on concrete block piers about 16 inches above the ground. Two of the structures were open at the ends. None was tightly enclosed.

Because of our conclusion on other issues, the evidence as to the condition of the property is not controlling, but there is testimony that it was unsightly, that weeds grew profusely and that rats and snakes were seen near by. A lieutenant in the fire department testified that in his opinion the buildings constituted a fire hazard.

Beginning in February or March 1958 the owners tried repeatedly, but without success, to obtain building permits and approval of the plans and specifications showing what they wanted to do with the buildings. In argument plaintiffs' counsel says, "Probably the Plaintiffs in their efforts to secure building permits to remodel these buildings were guilty of lack of tact in

dealing with the various officials and departments of the City of Des Moines." This is but a mild admission of what is apparent from the record. Procrastination for a year in complying with a board of health order is not recommended. After about 13 months plaintiffs exhausted the patience of the City officials.

On January 28, 1958, the City health officer notified the owners that the buildings were in violation of the state housing law and the local health ordinance and that steps must be taken to remedy defects within 30 days. The notice listed the violations and stated that a condemnation card had been posted on the premises.

On March 19, 1958, a notice dated March 12, 1958, from the coordinating committee, police department, health department, fire department and building inspection service was served on plaintiffs. The notice advised plaintiffs of the inspection of the buildings, the conclusion of the officials and that correction of the violations "requires the removal of the remainder of the buildings and all debris and rubbish" within 30 days.

On May 26, 1958, the City council, sitting as a board of health, found that inspections had been made and that a condition of filth and cause of sickness existed and that the buildings were a fire and public health hazard. By resolution the coordinating committee was directed to remove the buildings.

On May 28, 1958, plaintiffs were notified of this action by letter. Plaintiffs were given the option of removing the buildings and clearing the site and were asked to reply in 10 days. On January 20, 1959, plaintiffs were again notified by letter with the same wording. Plaintiffs admit receipt of these letters. Plaintiffs had repeated conferences with City officials about permits and extensions of time but did little to comply with the order.

On February 9, 1959, Mrs. Lacy, one of the plaintiffs who held the record title, attended the council meeting. The council organized as a board of health. Mrs. Lacy and other witnesses were heard. By vote, the buildings were ordered destroyed. Plaintiffs were given 10 days to tear down the buildings.

Plaintiffs started to dismantle the buildings and salvage the lumber. They made considerable progress but not enough to satisfy the City officials. On February 25, 1959, City workmen

with heavy equipment, including a bulldozer and trucks, moved onto the property and demolished and burned the buildings and salvage lumber.

I. Plaintiffs claim that there was a jury question as to the existence of a nuisance or fire or health hazard and that City officials and employees are personally liable for tortious burning of buildings.

The trial court held that plaintiffs, in the action of trespass, could not collaterally attack the action of the board of health and that the City was exercising a governmental function for which it could not be held liable. There was no issue of negligence.

The trial court directed a verdict for all defendants.

II. Appellants do not challenge the ruling directing a verdict for the City. The only issue on appeal is the liability of officials who authorized and directed the destruction of plaintiffs' property.

The state housing law is found in chapter 413 of the Code. In addition to the provisions of the statute, cities are authorized to enact ordinances and regulations and to prescribe for their enforcement.

Section 137.1 of the Code provides that in cities the mayor, health physician and members of the city council shall be members of the board of health.

Section 137.12 provides: "The local board, health officer, or sanitation officer, may enter any building, vessel, or other place for the purpose of examining into, preventing, or removing any nuisance, source of filth, or cause of sickness."

Section 137.13 provides: "The local board may order the owner, occupant, or person in charge of any property, building, or other place, to remove at his own expense any nuisance, source of filth, or cause of sickness found thereon, by serving on said person a written notice, stating some reasonable time within which such removal shall be made, and if such person fails to comply with said order, the local board may cause the same to be executed at the expense of the owner or occupant."

Section 137.17 provides: "Peace officers, when called upon by the local board, shall enforce its rules and execute the lawful orders of said board."

■ The summary powers delegated by chapter 137 of the Code are within the police powers of the state and are not violative of due process. State v. Strayer, 230 Iowa 1027, 299 N.W. 912; Peverill v. Board of Supervisors, 208 Iowa 94, 222 N.W. 535.

■ The powers conferred are of a legislative and governmental nature and a city is not liable for a defective execution thereof. Ogg v. City of Lansing, 35 Iowa 495, 14 Am. Rep. 499.

For cases holding that a city is not generally liable for the torts of its officers see Hagedorn v. Schrum, 226 Iowa 128, 283 N.W. 876; Looney v. City of Sioux City, 163 Iowa 604, 145 N.W. 287, 51 L. R. A., N. S., 546; Calwell v. City of Boone, 51 Iowa 687, 2 N.W. 614, 33 Am. Rep. 154; Lahner v. Incorporated Town of Williams, 112 Iowa 428, 84 N.W. 507.

Plaintiffs concede the City is not liable.

III. Plaintiffs argue that no personal immunity exists for City officials and employees when they have committed acts of misfeasance and malfeasance.

■ There is abundant authority for the proposition that official position does not in and of itself create immunity. These authorities, however, must be read in the light of the circumstances being considered. For unrelated torts and for acts of malfeasance there is no immunity. For mere negligence in the performance of an official duty there is no personal liability. Genkinger v. Jefferson County, 250 Iowa 118, 93 N.W.2d 130.

There is a distinction between an act that is a part of an official duty and an individual act of negligence not a part of an official act even though done while on official duty.

In Snethen v. Harrison County, 172 Iowa 81, 87, 152 N.W. 12, 13, it is said: "Upon this proposition, there is a lack of uniformity in the decisions of the various courts of this country; but after a careful examination of the underlying principles which should govern, this court has held that the agents who perform the governmental functions are no more responsible than the artificial body—the corporation for which they acted. We see no reason for departing from any of these established rules."

In Montanick v. McMillin, 225 Iowa 442, 458, 280 N.W. 608, 616, it is said: "There is a well marked distinction between

an act of an employee, agent or officer of the state or arm thereof, which is done as an act *per se* governmental in its nature and an act which, tho performed by the agent or officer while he is engaged in a public duty, is nevertheless unrelated to the performance of the duty in any other way. * * *."

The difference between the governmental organization of counties and cities is recognized in the cases, but what is said about liability of officials is equally appropriate.

Shirkey v. Keokuk County, 225 Iowa 1159, 1181, 275 N.W. 706, 281 N.W. 837, involved an action against the county, the county supervisors and a tractor operator. The distinction between a personal and governmental duty was recognized. On page 1173 of 225 Iowa, page 714 of 275 N.W., it is said: "Attempt is made to hold the supervisors liable by reason of the fact that they employed a man who was not competent to run the tractor. The action of the board of supervisors was in the performance of a governmental duty, and hence cannot be made the basis of an action. * * *." On rehearing this part of the opinion was affirmed but it was held that the tractor operator was not immune from liability for his own negligence.

In Barr v. Matteo, supra, Justice Harlan, in upholding the doctrine of immunity for official acts, quoted Judge Learned Hand as follows:

"The decisions have, indeed, always imposed as a limitation upon the immunity that the official's act must have been within the scope of his powers; and it can be argued that official powers, since they exist only for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds. A moment's reflection shows, however, that that cannot be the meaning of the limitation without defeating the whole doctrine. What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him. * * *." (Page 572 of 360 U. S.)

Justice Harlan then said: "The privilege is not a badge or emolument of exalted office, but an expression of a policy designed to aid in the effective functioning of government. The

complexities and magnitude of governmental activity have become so great that there must of necessity be a delegation and redelegation of authority as to many functions, and we cannot say that these functions become less important simply because they are exercised by officers of lower rank in the executive hierarchy."

In the case before us defendants are not sued as individuals nor for personal torts. They are named defendants as members of the City Council and as members of the coordinating committee of the City. The acts for which liability is sought were performed pursuant to the official action of the City Council sitting as a board of health. The defendants were not acting individually. They were sitting as members of an official body, clothed with statutory authority, performing an official duty. For their official acts so performed they are not personally liable.

IV. Plaintiffs argue, and offered evidence, that the buildings, lumber and materials on their property did not in fact constitute a nuisance on February 25, 1959. Assuming that this fact question might have been a proper subject for judicial review by injunction or certiorari proceedings at the time, it does not follow that the propriety of the official action may later be reviewed in a collateral attack by action for trespass. Plaintiffs' action was a collateral attack seeking a jury review of a factual situation determinable, and previously determined, by a body clothed with statutory authority. Such a collateral attack is not permissible.

To hold public officials personally and financially liable for the loss to some individual following official action would deter all but the most foolhardy or insolvent from assuming public responsibility. Municipal government might fall from lack of personnel.

V. There is authority that a board of health may act without notice, State v. Strayer, supra, but that is not important here. Plaintiffs admit receiving notices by mail. A notice was personally served on March 19, 1959. Plaintiffs were in numerous conferences with City officials. Mrs. Lacy knew of and personally attended the council meeting on February 9, 1959, when the resolution for destruction was passed. The problem had been

an issue for more than a year. Plaintiffs cannot claim lack of notice.

Plaintiffs rely on the holding and language in Cole v. Kegler, 64 Iowa 59, 19 N.W. 843. This was a case in which the town council caused the destruction by force of a dwelling house belonging to plaintiff after a resolution declaring it to be a nuisance. The owner brought action against the town and the individuals to recover damages. The court held that while cities have the right to abate nuisances, they do not have the power to finally and conclusively determine without notice or a hearing and without the right of appeal that a given thing constitutes a nuisance. There is language in the opinion supporting plaintiffs' claim but the premise from which the reasoning proceeds was the lack of notice and the lack of an opportunity to be heard as to whether a nuisance actually existed.

The facts as to notice are not the same in the case at bar. Here the issue had been pending and argued for a year. Plaintiffs had notice. They had been heard. Mrs. Lacy was present when the resolution was passed by the council sitting as a board of health. There has been no lack of due process.

While the Cole case, supra, has never been overruled, the language is weakened by later cases. The Cole case has been cited by some text writers but we do not find that it has ever been cited in Iowa.

Beeks v. Dickinson County, 131 Iowa 244, 247, 108 N.W. 311, 6 L. R. A., N. S., 831, 9 Ann. Cas. 812, decided in 1906, was a case of mistaken quarantine by the health officer. There was a wrong diagnosis of smallpox. At that time smallpox was more of an emergency and public hazard than were the 1959 buildings of plaintiffs in the case before us. Though the background differs, the legal principle is unchanged. In speaking of the members of the local board of health the court said: "They were therefore acting judicially, and it is the general rule that officers so acting are not liable for injuries which may result from such acts performed in the honest exercise of their judgment, however erroneous or mistaken the action may be, provided there be no malice or wrong motive present. * * *."

VI. This is not a case based on negligence. It is a case of an affirmative act claimed to be willful, intentional and

malicious. The record does not support plaintiffs' claim. There is no evidence of malice, ill will or improper motive. Plaintiffs' counsel argue that plaintiffs' lack of tact may explain, but does not excuse, what they call the summary and arbitrary action by the City officials. The council meeting (board of health) at which final action was taken was on February 9, 1959. On February 10, 1959, plaintiffs were given a ten-day extension to remove the buildings. Plaintiffs did not ask for any further extension but they did start to dismantle the buildings. Winter weather impeded progress. If we were to consider only the time from the last extension, the fact that plaintiffs were finally acting, and the fact that February is not the best time for the eradication of weeds or the killing of the snakes defendants claim were in the neighborhood, defendants' move in force on February 25th would seem precipitous. With the aid of hindsight it was perhaps unnecessary. In retrospect even though there might appear to have been an error in judgment, malice cannot be inferred therefrom. The City had inspected, written, served notice, argued and resolved over a period of a year without appreciable results. The exhaustion of official patience after a year, even in the face of plaintiffs' belated start toward compliance with official orders, does not make a jury question as to malice.

Counsel for the respective parties on this appeal did not try the case in the trial court. They are now faced with procedural problems not of their own creation. It is conceded that the pleadings were not adequate. It is conceded plaintiffs could and should have followed a different and available procedure for judicial review. Because of plaintiffs' lack of success in the course they did follow, we are now asked to create a new field of tort liability inimical to efficient government. This we cannot do.

There is little similarity in the issues as pleaded and the evidence offered. In spite of this confusion the trial court arrived at the right result and for the right reason. Plaintiffs' lack of tact and their procrastination were too much and too long. The result is a case of damnum absque injuria.

Because of our conclusions, other propositions argued are not controlling.

The case is—Affirmed.

All JUSTICES concur.

LARSON, J., concurs specially.

LARSON, J. (concurring specially)—I find no justification for the destruction of piles of lumber, moving timbers, and other building materials located on plaintiffs' premises. While the order and destruction of the buildings was perhaps proper, I am satisfied those sent to remove the designated hazards went too far. The property unjustly destroyed by City employees, whether by mistake or design, should be paid for by those responsible. I would so provide.