Glen O. HANCOCK, Appellant,

v.

CITY COUNCIL OF the CITY OF
DAVENPORT and the City of
Davenport, Iowa, Appellees.

No. 85–1011.

Supreme Court of Iowa.

Aug. 20, 1986.

John T. Flynn of Brubaker, Flynn & Darland, Davenport, for appellant.

John R. Martin, Corp. Counsel, Davenport, and Michael J. Meloy, City Atty., Davenport, for appellees.

WOLLE, Justice.

The defendants, city council and city of Davenport (collectively "the city"), adopted a resolution which declared plaintiff Glen O. Hancock's apartment building in downtown Davenport to be a public nuisance and ordered its demolition. The district court thereafter denied Hancock's consolidated petitions seeking certiorari and injunctive relief. We reverse and remand for entry of an order sustaining the writ of certiorari. The proceedings through which the city declared the building a nuisance and ordered it demolished did not comply with the city's own ordinances and did not satisfy requirements of procedural due process guaranteed by the fourteenth amendment of the United States Constitution.

I. *Scope of Review.*

Our scope of review in this certiorari action turns on the nature of the issues we reach for decision. Our review of certiorari proceedings brought in the district court is generally governed by the rules applicable to appeals in ordinary actions. *Hardy v. Grant Township Trustees,* 357

N.W.2d 623, 625 (Iowa 1984); Iowa R.Civ.P. 318. Apart from constitutional issues, therefore, our review is at law. *Bevers v. Kilburg,* 326 N.W.2d 902, 904 (Iowa 1982). Hancock has exercised his right to raise due process issues in his certiorari action, and "where violations of basic constitutional safeguards are involved we make our own evaluation of the facts from the totality of the circumstances." *Iowa Freedom of Information Council v. Wifvat,* 328 N.W.2d 920, 922 (Iowa 1983).

We do not agree with Hancock's contention that his request for injunctive relief made this an equitable proceeding reviewable de novo. Hancock's pleadings included a request for an injunction as an auxiliary remedy dependent on a determination that the city had no substantive factual basis for declaring his building a public nuisance. The trial court decided all procedural and substantive issues adversely to Hancock, and it did not decide whether injunctive relief would have been appropriate if Hancock had prevailed on the merits. We do not reach that question. Serious flaws in the proceedings through which the city acted preclude our reaching beyond the procedural due process issues raised by Hancock and decided in this appeal. Hancock's request for an injunction as an auxiliary remedy does not change our scope of review in this case. *See Green v. Advance Homes, Inc.,* 293 N.W.2d 204, 208 (Iowa 1980).

II. *Background Facts.*

The trial court's well-written decision presents the background facts, supported by evidence offered at the certiorari trial, in a clear and informative manner. We adopt that statement of facts, with a few additional pertinent facts inserted in brackets, as follows:

The Vale Apartment building is an 111-year-old, five-story, brick-over-wood frame structure located at 210 East Fourth Street on the east side of downtown Davenport. The building has approximately 90 apartment units, the units varying in size and number of rooms, but generally consisting of a living room,

bedroom and bathroom. The building was an elegant hotel, primarily serving railroad passengers during the last quarter of the Nineteenth Century. It thrived at the beginning of this century, and was known then as the Burtis-Kimball House. By 1920 the building's glory had declined and it was converted into the Perry Apartments. In 1941 it was greatly damaged by fire, and was purchased and rebuilt as an apartment building by W. J. Vale. Plaintiff's father, Thomas J. Hancock, purchased the building in 1971 and operated it as an apartment building. It has had several contract purchasers who have let it go back to the vendors, and it has fallen into disrepair. Plaintiff acquired title within the past year, but had worked with the building through his father's ownership for many years. Plaintiff has endeavored to get substantial financing to refurbish the building to its original splendor. Plaintiff has presented plans for renovation and evidence that the main bearings of the building are structurally sound. In addition, the building is listed in the National Register of Historic Places. The building is now vacant, without heat, water, or power. The doors and windows of the first floor are boarded up, as are the windows of the second and third floor. Plaintiff pleads with the City and the Court that he be allowed to "mothball" the building while he endeavors to secure the $3,000,000 to $4,000,000 necessary for renovation. This has been his prayer for several years.

The record shows that the City's patience with Plaintiff has become increasingly strained. The building has been cited for numerous housing and fire code violations since the 1950's, as it has declined into further disrepair. On January 14, 1982, the City vacated approximately 120 residents from the building, having found it was substandard and constituted a threat to the life, health and safety of the residents. There has been a continuing controversy between the parties about the upkeep of the premises. In September of 1983 the City issued a notice and order to [Thomas J. Hancock] to repair the building to meet housing code standards or to demolish it [within 90 days. Glen O. Hancock and Mary Jane Kruse, Thomas' children, were contract purchasers of record but were not provided with notice. The notice provided that objections to the finding could be made by appearing before the city council on October 3, 1983. No one appeared or objected.] When no formal action was taken, the City, in December of 1983, gave Plaintiff and others having a legal interest in the property, notice to appear to show cause why the building should not be declared a nuisance and condemned. [The parties dispute whether Mary Jane Kruse was properly notified.] Plaintiff [Glen O. Hancock introduced himself by letter to the council, described his circumstances and plans for the building, and] prayed for and received an extension of time to February 15, 1984, in order to initiate a program for rehabilitation of the building. Again, there was no formal action by the owners, and on February 15, 1984, the City initiated final action to take effect March 22, 1984. On March 22, 1984, the City initiated the formal bidding procedures for the demolition of the building. On May 11, 1984, Plaintiff requested and received a temporary injunction against demolition. On or about August 27, 1984, the City published public notice and served the owners [again Mary Jane Kruse was not served] with notice of a public hearing to be held before the Davenport City Council as a committee of the whole on September 4, 1984, to recommence the nuisance determination and demolition procedures. On September 4, 1984, the parties were in court on Plaintiff's Application for Extension of the Temporary Injunction and Ruling on the Permanent Injunction. The record shows that those requests were denied by the Court, the issue having become moot because of the City's recommencement of its proceedings. Also on September 4, 1984, the City Council, as a

committee of the whole, conducted a public hearing on whether or not they should find the Vale Apartment building unsafe or otherwise dangerous to the public, declare it to be a public nuisance, and order its demolition. On September 5, 1984, the Davenport City Council passed a resolution finding the Vale Apartment building substandard to the extent that it endangers the life, health, safety or welfare of the public and resolving that the building be demolished. The City Council also passed a resolution awarding the demolition to a firm that was the lowest dollar bidder of those who bid on the demolition project as a part of the previous proceeding.

III. *Nuisance Law and Procedural Due Process.*

The city council found Hancock's building to be a public nuisance. The general statutory definition of a nuisance is provided in Iowa Code section 657.1:

Whatever is injurious to health, indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance....

In *Pottawattamie County v. Iowa Department of Environmental Quality*, 272 N.W.2d 448, 453 (Iowa 1978), we stated:

The same circumstances may create both a public and private nuisance. The facts may create a nuisance to the general population and also a nuisance to individual plaintiffs. ... The elements of public nuisance are: (1) unlawful or antisocial conduct that (2) in some way injures (3) a substantial number of people. ... The determination of private nuisance rests upon whether there has been "an actionable interference with a person's interest in the private use and enjoyment of his land." *Patz v. Farmegg Products, Inc.*, 196 N.W.2d [557, 560 (Iowa 1972)].

■ Property owners hold title subject to the authority of the state to regulate use and enjoyment of property so as to prevent and abate public nuisances. *City of Waterloo v. Waterloo, Cedar Falls & Northern Railway Co.*, 149 Iowa 129, 136, 125 N.W. 819, 821 (1910). Of course the police power to control property must be exercised with caution; action short of razing a building may be called for if a public hazard can be eliminated with less drastic action which effectively abates any condition constituting a public nuisance. *Childs v. Anderson*, 344 Mich. 90, 95–96, 73 N.W.2d 280, 282–83 (1955).

■ A municipality, in the exercise of its police power, may declare and abate nuisances by adopting and enforcing reasonable ordinances. *City of Cedar Falls v. Flett*, 330 N.W.2d 251, 255 (Iowa 1983). But procedural due process does limit the exercise of that power.

■ *Walker v. Johnson County*, 209 N.W.2d 137 (Iowa 1973), forcefully stands for the proposition that due process notice and hearing requirements apply when a municipality undertakes to exercise its police power to abate nuisances when no emergency exists. *Id.* at 140. In *Walker*, as here, no emergency existed. The property owner in *Walker* claimed that a city's action pursuant to an ordinance violated his right to due process because the city's board of health had declared, without notice to him and a hearing, that his inoperable automobiles constituted a nuisance. We viewed the state's police power "against the backdrop of recent decisions sharpening the thrust of due process to protect rights of individuals caught in the web of statute-sanctioned prejudgmental court proceedings and the discretionary decisions of a faceless bureaucracy." *Id.* at 139. We held:

Under these circumstances, where no emergency exists and the determination of a nuisance lies only in the discretion of an administrative officer, the scales tip against unrestricted governmental action under the guise of police power and in favor of the due process notice and hearing requirements.

*Id.* at 140.

Solid support for that holding was provided by a much earlier decision of this

court, *Cole v. Kegler*, 64 Iowa 59, 19 N.W. 843 (1884). In *Cole* the city council passed a resolution condemning plaintiff's property without prior notice to the plaintiff. In discussing the statute providing that cities could abate public nuisances we stated:

The power to abate implies that there is or may be in existence something to be abated. A nuisance must exist before it can be abated. The power conferred, therefore, authorizes cities and towns to abate an existing thing. No express power is given to declare that a nuisance exists, nor do we think that it can or should necessarily be implied. The council may abate all nuisances, but this does not imply that it can determine what constitutes a nuisance as an existing thing, for the reason that the nuisance must in fact exist. If it does, then it may be abated. If it does not, the council has no power to declare it, or, in other words, create, and then proceed to abate. We do not think the general assembly intended to confer on cities and towns the power to finally and conclusively determine, without notice or a hearing, and without the right of appeal, that any given thing constitutes a nuisance, unless, probably, in cases of great emergency, so strong as to justify extraordinary measures upon the ground of paramount necessity.

*Cole*, 64 Iowa at 61, 19 N.W. at 844. The United States Supreme Court, in an analogous case involving several state garnishment statutes, eloquently expounded on a property owner's right to notice and a due process hearing before seizure of property, stating:

[T]he prohibition against the deprivation of property without due process of law reflects the high value, embedded in our constitutional and political history, that we place on a person's right to enjoy what is his, free of governmental interference.

*Fuentes v. Shevin*, 407 U.S. 67, 81, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556, 570 (1972).

A. *The city's building code and nuisance ordinance.* With procedural due process at issue, we must summarize the provisions of the city's municipal code which it claims to have relied upon in moving toward demolition of the building as a public nuisance.

Pursuant to the home rule power provided in chapter 364 of the Iowa Code, the city had adopted by ordinance a uniform housing code providing for building inspections which ultimately could lead to the demolition of substandard buildings. One chapter of that code provided for notices to owners of buildings deemed to be substandard. A notice which might lead to an order of demolition was to include "a brief and concise description of the conditions found to render the building dangerous," and building owners were to be given time within which to repair or otherwise remedy dangerous conditions. Two chapters of the housing code prescribed procedures for appeal to a housing advisory and appeal board and further provided for a contested case hearing. Parties were afforded the right to examine and cross-examine witnesses, introduce evidence, and be represented by counsel. A final decision of the fact finder was to be in writing and contain findings of fact.

The city had also adopted a separate nuisance ordinance which provided in part that unsafe buildings were declared to be public nuisances and such nuisances could be abated in accordance with procedures specified in the ordinance. The nuisance ordinance contemplated that building officials and the fire marshal would inspect buildings and make written findings concerning this investigation. It also provided that building owners would receive written notice of the findings of those inspections, as well as written notice of the time and place at which the owners might appear to object to the findings and show cause why the building did not constitute a nuisance. The nuisance ordinance by separate provision allowed the building official or fire marshal to order a nuisance dismantled without prior notice to the property owner in an emergency situation, but the city does

not contend the circumstances of this case constituted an emergency.

In summary, the housing code and nuisance ordinance each provided slightly different procedures leading to a potential order for demolition of a building, but both provided for notice to the building owner of the specific conditions which might necessitate use of that police power of the city.

■ In comparing the procedures set forth in the city's ordinances with the procedures used by the city in this case, we pass the question whether the city could properly interchange the housing code and nuisance ordinance procedures in arriving at an enforceable order for demolition. We conclude that the city did not comply with the procedures set forth in either of those ordinances, and its procedures also fell short of the requirements for satisfying procedural due process under the fourteenth amendment.

B. *Procedures followed by the city.* Problems of notice and fair hearing are involved in the proceedings which ended with the resolutions of September 5, 1984, approving demolition of Hancock's building as a public nuisance. Notice was a problem in part because two persons had equitable title to the property.

Plaintiff Glen Hancock and Mary Jane Kruse purchased the property and recorded their purchase contract on February 16, 1983. The September 1983 notice sent to Hancock's father, Thomas Hancock, was not sent to these owners of record and therefore did not place in jeopardy their interest in the property. Furthermore, the city apparently does not rely on that notice or on the failure of the owners to appear at the October 1983 hearing.

The city's second notice, given on December 15, 1983, was addressed to Hancock and Mary Jane but was not mailed to her. While Glen Hancock appeared and received an extension of time, Mary Jane did not appear. The city took its actions in February and March of 1984, moving toward demolition of the building, on the basis of that December notice. But on September 4, 1984, the city waived reliance on those earlier actions because of possible notice problems. With its earlier notices and resolutions abandoned, the validity of the city's September 5, 1984 resolutions turns on whether Hancock was given satisfactory notice of the September 4 quasi-judicial hearing before the city council and whether that hearing itself satisfied due process.

The only formal notice now relied upon by the city in support of its September 5 resolutions is the mailed notice of August 27, 1984. That notice concerning the critical September 4 city council hearing was served on Hancock, but a certified letter addressed to Mary Jane Kruse was returned unclaimed. The city on August 27 did publish a notice prescribed by its public nuisance ordinance, but that notice merely defined the issue to be whether the building was "unsafe and otherwise dangerous." Attached to the notice was a copy of the proposed resolution for final demolition of the property, which stated generally that the building was in a "substandard condition to an extent that it endangers the life, health, safety or welfare of the public, all in accordance with chapter 10 of the Uniform Housing Code." The proposed city council resolution attached to the notice of hearing also referred to "building reports of the city of Davenport fire and housing departments ... as to the substandard conditions existing in this building," but the referenced reports were not attached. It is those specific reports that are pivotal on this question whether Hancock received procedural due process.

The city's housing code and nuisance ordinance both plainly required that the written notice to the property owner must contain a detailed statement of the findings of building inspectors as to deficiencies which might lead to demolition. The notice served upon Hancock for purposes of the September 4, 1984 public hearing did not contain such a statement. Detailed affidavits from the fire marshal and the building inspector, arguably containing the necessary information, were attached to the proposed resolution that was in the hands of city council members during the hearing,

but those critical affidavits were not attached to Hancock's notice and were not published for purpose of giving notice to Hancock and Mary Jane Kruse.

The city contends that Hancock had actual notice of the contents of those affidavits, because they had been attached to a resistance the city filed in district court concerning an earlier application by Hancock for a temporary injunction. But that district court proceeding was terminated by the city's decision to recommence proceedings to abate this alleged nuisance. Having reason to learn of the contents of an affidavit in connection with an abandoned court proceeding is not the same as being given due process notice of a specific problem before a due process hearing. The notice given to Hancock concerning the September 4 hearing satisfied neither the city ordinance nor Hancock's constitutional right to procedural due process.

The city cites *Lacy v. City of Des Moines*, 253 Iowa 621, 113 N.W.2d 279 (1962), in contending that a party's presence at a council meeting and general knowledge of factual issues may satisfy due process notice requirements. *Lacy* was a collateral damage action and did not involve a direct challenge to constitutional notice and hearing requirements. But to the extent its language is inconsistent with our holding in this case on the issue of adequate notice of a due process hearing, *Lacy* is disapproved.

■ The requirement of a hearing presupposes a meaningful opportunity to be heard. *In re Bishop*, 346 N.W.2d 500, 507 (Iowa 1984). Hancock was entitled to know at the time of the hearing precisely what evidence the city council would be taking into account in deciding whether the building constituted a nuisance and the action that would be required to abate those conditions. Additionally, the decision of the city following the hearing should have included findings of fact, in writing, which would inform the parties of the basis of the decision and aid in a district court's certiorari review of its action. *See Hawkeye Outdoor Advertising, Inc. v. Board of Adjustment,* 356 N.W.2d 544, 548 (Iowa 1984); *Cedar Rapids Steel Transportation, Inc. v. Iowa State Commerce Commission,* 160 N.W.2d 825, 837 (Iowa), *cert. denied,* 394 U.S. 918, 89 S.Ct. 1189, 22 L.Ed.2d 451 (1968).

Hancock was not informed before or at the time of the public hearing itself what were the conditions which he must cure to avoid demolition. He may well have reasonably believed he had already cured the allegedly dangerous conditions that were described in very general terms in the notice to him. At the public hearing on September 4, 1984, the affidavits of the fire marshal and building inspectors were not furnished to Hancock, even though the council members had them in hand and later relied heavily on them. Hancock's attorney emphasized that he had not received such specific factual reports of city officials when, at the public hearing, he made the following unrebutted statement:

Now ... whatever is decided tomorrow I think that decision has to be based on whether or not this building is a public nuisance and that is the sole decision that you have to make, whether it's a public nuisance in its present condition as it exists today. You've heard our evidence in support of that. *You have taken into account various housing code reports of various city officials which apparently were attached to your copy of the resolution. We didn't get them.* They again do not establish per se that this is a public nuisance. You have to establish that fact in your own minds and on the record—this is a public nuisance and that it's a danger to the people walking by and people on the street. And with that comment I just thank you for your time.

(Emphasis added.)

The city presented no evidence or testimony whatsoever at the September 4 hearing. The affidavits were not referred to nor were they entered into the record at the hearing in any formal way. It appears that the fire marshal and the housing in-

spector were not even present at the hearing.

On the evening of September 5, the day after the hearing, the city council voted and passed the resolution condemning the building as a public nuisance. No findings of fact were made; the crucial affidavits of the building inspectors and fire marshal were simply attached to and made a part of the resolution. Before the final votes were taken on those September 5 resolutions, the council members did not comment on whether the building was a public nuisance; they apparently treated that issue as a foregone conclusion.

We conclude that the city did not provide Hancock the meaningful opportunity to be heard which its ordinances contemplated and constitutional due process requires.

Because the city failed to afford Hancock his right to procedural due process, the district court should have sustained the writ of certiorari. We now direct that an order be entered sustaining the writ.

### IV. *Other Issues Raised.*

We recognize that the city may now undertake new proceedings looking toward abatement of the alleged conditions in the building which may or may not constitute a public nuisance. Hancock's lengthy assignment of errors tempts us to answer questions which might give the parties guidance on procedural and substantive matters. But we choose not to address most of those issues at this time and on this record. The city council proceedings, after all, were flawed. Neither the city nor Hancock made a satisfactory evidentiary presentation at the September 4 quasi-judicial hearing. Neither that record nor the record made in this certiorari proceeding before the district court provides an adequate factual basis for answering substantive questions governing the law of nuisance in general or this case in particular. We do address two issues raised by Hancock.

■ A. *Damages under section 1983.* Hancock asserted a claim for damages against the city for the alleged due process deprivation, based on 42 U.S.C. section 1983 (1983). He prayed for "consequential and compensatory damages, attorneys fees, court costs and all reasonable expenses in connection with this lawsuit."

In annulling the writ, the trial court by necessary implication also dismissed Hancock's section 1983 action. Hancock argues on this appeal that we should reinstate the action and award damages. We do not have original jurisdiction to do so. Indeed, the certiorari action was necessarily limited by rule 308 of the Iowa Rules of Civil Procedure to "questions of jurisdiction or illegality of the actions complained of...." *See also Black v. University of Iowa,* 362 N.W.2d 459 (Iowa 1985). Our decision, of course, is without prejudice to Hancock's right to assert that claim in a separate original action. *Id.* at 464.

■ B. *Constitutionality of the nuisance ordinance.* Hancock asks that we find the city's nuisance ordinance itself unconstitutional on its face on the grounds that it improperly shifts the burden of proof from the city to the property owner and gives the city excessive authority to make judicial determinations.

Addressing the first ground, Hancock has not sufficiently designated what burden of proof he was unfairly required to sustain. We have held that the city could not prevail in its effort to declare and abate this nuisance without introducing evidence in a due process hearing, and we read the nuisance ordinance to require that. Hancock has not overcome the strong presumption that the ordinance is constitutional. *See MRM, Inc. v. City of Davenport,* 290 N.W.2d 338, 342 (Iowa 1980).

■ On the second ground, we conclude that Hancock has likewise failed to establish that the ordinance facially violates any constitutional provision. "We will not hold an act unconstitutional unless such a result clearly, plainly, and palpably is required." *Franks v. Kohl,* 286 N.W.2d 663, 669 (Iowa 1979). We have previously held that city councils may act in a quasi-judicial capacity in other contexts. *See, e.g., Massey v. City*

*Council of City of Des Moines,* 239 Iowa 527, 531–32, 31 N.W.2d 875, 878 (1948) (listing several quasi-judicial actions of city which are subject to certiorari review by district court).

Hancock has satisfied us that the city's action which did not comply with procedures called for in its ordinances deprived him of procedural due process. He has not met his heavy burden to show the ordinance itself is unconstitutional.

REVERSED AND REMANDED FOR ENTRY OF ORDER SUSTAINING WRIT.

All Justices concur except NEUMAN, J., who takes no part.