STATE, PLAINTIFF, *v.* SMITH, DEFENDANT.

Common Pleas Court, Cuyahoga County.

No. 79437. Decided June 3, 1964.

*Mr. John T. Corrigan,* prosecuting attorney, By *Mr. John Patton* and *Mr. Joseph Donahue,* assistant prosecuting attorneys, for the state.

*Mr. James R. Willis,* for the defendant.

McMonagle, J.  The defendant herein was indicted by the Cuyahoga County Grand Jury charged with violation of the Ohio Narcotic Drug Act, specifically Sections 3719.09, 3719.172 and 3719.20(A), Revised Code.

Prior to trial, the defendant moved the Court for an order suppressing evidence procured by the Cleveland Police Department at about 8:15 P. M. on October 24, 1963, when they searched the room where the defendant was residing at 2457 East 83rd Street, Cleveland, Ohio, and his person and effects.

The motion to suppress is based upon defendant's contentions that:

(1) The officers unlawfully, illegally and unconstitutionally entered the defendant's room, which constituted his home, and conducted an illegal search and seizure.

(2) The officers did not have a search warrant or any other process for the arrest of the defendant and the search of his property.

(3) The entry by the officers into defendant's premises was not in accordance with the laws pertaining thereto.

The State acknowledges that the officers did not have a search or arrest warrant at the time of entry and contend that the motion to suppress, however, should be overruled. The State contends that the entry and search were valid because of the provisions of Section 3719.22, Revised Code, which states that police officers were authorized ". . . to enter and search any room, rooms or other place wherein a violation of (State Drug Act) *is believed to exist.*" (Emphasis added.)

It is further the contention of the State that the evidence in question was not obtained by a search and seizure in violation of the Constitution—that the search which uncovered the evidence was a reasonable one made in connection with a lawful arrest.

It is the State's position that the police had reasonable grounds to believe, and did believe, by virtue of information given to them by responsible persons that the defendant's room was then occupied by the defendant who had committed a felony a few days prior to October 24, 1963, that is, he had unlawfully sold narcotics; that, at the time of entry, the de-

fendant was committing a felony in his room by either possessing a narcotic drug for sale or actually selling a narcotic drug contrary to law, and that the officers entered his room for the purpose of arresting him for investigation on suspicion of violation of the narcotics' act; that the police officers had the right contemporaneous with the said arrest, and without a search warrant, to search the defendant and the place where the arrest was made and all evidence procured thereby may be properly presented to the Court.

Defendant's motion is based upon the rights guaranteed all people by the Fourth Amendment of the Constitution of the United States and by its counterpart, Article I, Section XIV of the Constitution of Ohio (which provisions are almost identical), and also the Fourteenth Amendment of the Constitution of the United States—in accordance with the constructions and comments thereto provided—in the decisions of the Supreme Court of the United States.

The *Fourth Amendment of the Constitution of the United States* provides as follows:

### SEARCHES AND SEIZURES

The right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable* searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. (Emphasis added.)

The *Fourteenth Amendment of the Constitution of the United States* provides as follows:

### RIGHTS OF CITIZENS

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property *without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.* (Emphasis added.)

*Article I, Section 14 of the Constitution of Ohio* provides as follows:

## SEARCH WARRANTS AND GENERAL WARRANTS

The right of the people to be secure in their persons, houses, papers, and possessions, against *unreasonable* searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person and things to be seized. (See Const. 1802, Art. VIII, Sec. 5.) (Emphasis added.)

The Supreme Court of the United States, in the *Mapp case*, has set aside the previously existing rule in the State of Ohio that evidence obtained in an illegal search and seizure may be received in evidence.

The law by which all courts of the United States, that is, Federal and State, are now bound is that as pronounced in the case of *Mapp* v. *Ohio*, 367 U. S., 643, 81 Sup. Ct. 1684, 6 L. Ed. (2d), 1081 (1961), 86 Abs., 513. This case originated in the Court of Common Pleas of Cuyahoga County, Ohio. On June 19, 1961, the Supreme Court of the United States in the *Mapp case* overruled *Wolf* v. *Colorado*, 338 U. S., 25 (1949), in which it held:

... that in a prosecution in a State court for a State crime the Fourteenth Amendment does not forbid the admission of evidence obtained by an unreasonable search and seizure.

and said, at page 654:

... Today we once again examine *Wolf's* constitutional documentation of the right to privacy free from unreasonable state intrusion, and, after its dozen years on our books, are led by it to close the only courtroom door remaining open to evidence secured by official lawlessness in flagrant abuse of that basic right, reserved to all persons as a specific guarantee against that very same unlawful conduct. *We hold that all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court.* (Emphasis added last sentence.)

Since the Fourth Amendment's right of privacy has been declared enforceable against the States through the Due Process Clause of the Fourteenth, it is enforceable against them by the same sanction of exclusion as is used against the Federal Government.

Further, the Court said, at page 653:

... Because there can be no fixed formula, we are admittedly met with "recurring questions of the reasonableness of searches," but less is not to be expected when dealing with a Constitution, and, at any rate, "(r)easonableness is in the first instance for the (trial court) ... to determine." *United States* v. *Rabinowitz*, 339 U. S., 56, 63 (1950).

If the motion of the defendant is well taken, it should be granted in accordance with the command of the Supreme Court of the United States in the *Mapp case*. The elimination of this evidence would probably make it impossible for the State of Ohio to prove the corpus delicti. Decisions of the Supreme Court of the United States involving these constitutional provisions call for a liberal construction of them so as to provide the protection of the rights guaranteed to the people.

Recent decisions of the United States Supreme Court clearly command that there be no tendency to permit these rights to be eroded away. The Court has particular reference to two cases that were decided by the Supreme Court of the United States on March 23, 1964, namely, *John Brenton Preston, Petitioner,* v. *United States* and *Joseph Stoner, Petitioner,* v. *State of California*. Protection of the rights of the people, of course, includes the right of the people to be protected from the ingress of crime or criminals and this is apparent from the footnote in the *Stoner case*, which bears upon the matter now being considered by this Court.

*Footnote No. 4:*

The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrset is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody, is not to be doubted. See *Carroll* v. *United States*, 267 U. S., 132, 158; *Weeks* v. *United States*, 232 U. S., 383, 392 ... But the right does not extend to other places. Id. at 30. See also *Ker* v. *California*, 374 U. S., 23, 42, n. 13; *Lustig* v. *United States*, 338 U. S., 74, 79-80.

In the *Preston case*, the Court said:

Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. *Weeks* v. *United States*, 232 U. S., 383, 392 (1914); *Agnello* v. *United States*, 269 U. S., 20, 30 (1925). This right to search and seize without a search warrant extends to things under the accused's immediate control, *Carroll* v. *United States, supra,* 267 U. S. at 158, and, to an extent depending on the circumstances of the case, to the place where he is arrested, *Agnello* v. *United States, supra,* 269 U. S. at 30; *Marron* v. *United States,* 275 U. S., 192, 199 (1927); *United States* v. *Rabinowitz,* 339 U. S., 56, 61-62 (1950).

Defendant's brief in support of his motion states that the specific question raised by his motion to suppress is ''Was the arrest of the defendant and a search of his premises legal?''

If the arrest was legal, the contemporaneous search was also legal and contraband procured therein would be legally admissible in evidence.

If the officers entered the defendant's room for the purpose of arresting him for investigation on suspicion of violation of the narcotics act and did so arrest him and probable cause had existed, prior to the entry, to warrant a cautious man in the belief that the defendant was guilty of a violation of the state narcotic act (a felony), then such entry and arrest were legal.

The Fourth Amendment has been construed to outlaw all searches made without a warrant excepting those incident to a lawful arrest.

When incident to a *lawful arrest,* a search without a warrant is reasonable. This is an exception to the constitutional provisions based upon necessity. *Johnson* v. *United States,* 333 U. S., 10; *Giordenello* v. *United States,* 357 U. S., 480; *Draper* v. *United States,* 358 U. S., 307.

In *United States* v. *Rabinowitz,* 339 U. S., 56 (1950), see 94 L. Ed., 653, which states in the Headnotes at page 654 as follows:

2. The right to search, *without a search warrant,* the person of an accused, when legally arrested, has always been recognized under English and American law.

4. What is a reasonable search not prohibited by the Fourth Amendment is not to be determined by any fixed formula, but depends upon the facts and circumstances of each case.

6. A search *without warrant* does not violate the constitutional prohibition against unreasonable searches and seizures merely because the officers who carry out the search failed to procure a search warrant, although they had time to do so, since the legality of such a search turns upon the *reasonableness* under all the circumstances, and not upon the practicability of procuring a search warrant (overruling *Trupiano* v. *United States*, 334 U. S., 699, . . .). (Emphasis added.)

In *Harris* v. *United States*, 331 U. S., 145, see 91 L. Ed., 1399, which states in the Headnotes as follows:

5. The test of reasonableness by which the constitutional permissibility of a search and seizure is determinable cannot be stated in rigid and absolute terms. *Each case is to be decided on its own facts and circumstances.*

6. The prohibition by the Fourth Amendment of unreasonable searches and seizures *does not preclude search and seizure without a search warrant where incident to lawful arrest.*

7. A search without a search warrant which may be made as incident to a lawful arrest may under appropriate circumstances extend beyond the person of one arrested *to include the premises under his immediate control.* (Emphasis added.)

It is, of course, essential that a lawful arrest is a necessary prerequisite to the search. The necessity which justifies a search incident to an arrest does not and can not arise until an actual lawful arrest is made. The necessity in such cases arises from the need to protect the arresting officer, to deprive the prisoner of potential means of escape and to prevent the destruction of evidence. This destruction might consist of the dissipation of a narcotic drug by use by an addict. The arrest must be based on the existence of probable cause (or reasonable grounds, the terms being used interchangeably by the courts) for an arrest prior to the arrest. *McDonald* v. *United States*, 335 U. S., 451. See also *Johnson* v. *United States*, 333 U. S., 10, which states at pages 16-17:

Thus the Government is obliged to justify the arrest by

the search and at the same time, to justify the search by the arrest. This will not do. An officer gaining access to private living quarters under color of his office and of the law which he personifies must have some valid basis in law for the intrusion. Any other rule would undermine the "right of the people to be secure in their persons, houses, papers and effects" and would obliterate one of the most fundamental distinctions between our form of government where officers are under the law and the police-state where they are the law.

In *Ker* v. *California*, 374 U. S., 23, the court held in the second syllabus:

Having reason to believe that one of the petitioners was selling marijuana and had just purchased some from a person who was known to be a dealer in marijuana, California police officers, without a search warrant, used a passkey to enter the apartment occupied by petitioners, husband and wife, arrested them on suspicion of violating the State Narcotic Law, searched their apartment, and found three packages of marijuana, which they seized. At petitioners' trial, these packages of marijuana were admitted in evidence over petitioners' objection, and they were convicted. In affirming the convictions, the California District Court of Appeal found that there was probable cause for the arrests; that the entry into the apartment was for the purpose of arrest and was not unlawful; and that the search, being incident to the arrests, was likewise lawful and its fruits admissible in evidence against petitioners. *Held*: The judgment is affirmed.

And at the bottom of Page 40, Footnote 12 stated in part:

. . . It goes without saying that in determining the lawfulness of entry and the existence of probable cause we may concern ourselves only with what the officers had reason to believe *at the time of their entry*. *Johnson* v. *United States*, 333 U. S., 10, 17 (1948). As the Court said in *United States* v. *DiRe*, 332 U. S., 581, 595 (1948), "a search is not to be made legal by what it turns up. In law it is good or bad when it starts and does not change character from" what is dug up subsequently.

In the *Ker case, supra,* the court said further at the bottom of page 41:

Petitioners contend that the search was unreasonable in that the officers could practicably have obtained a search warrant. The practicability of obtaining a warrant is not the controlling factor when a search is sought to be justified as incident to arrest. *United States* v. *Rabinowitz, supra*; but we need not rest the validity of the search here on *Rabinowitz*, since we agree with the California court that time clearly was of the essence. The officers' observations and their corroboration, which furnished probable cause for George Ker's arrest, occurred at about 9 p. m., approximately one hour before the time of arrest. The officers had reason to act quickly because of Ker's furtive conduct and the likelihood that the marijuana would be distributed or hidden before a warrant could be obtained at that time of night.

The contention by the State, in substance, to the effect that the provisions of Section 3719.22, Revised Code, which provide that police officers are authorized ''to enter and search any room, rooms or other places wherein a violation of the state drug act *is believed to exist* . . .'' subjects the person suspected of violating any state narcotic act to entry and searches other than those to which other persons would be subjected. The *Fourth Amendment* applies to the same degree and with equal force to persons suspected of dealing in narcotics as it does to persons suspected of dealing in illegal alcohol, counterfeiting, policy, etc. The rights and protections guaranteed to all people by the Fourth Amendment may not be altered by any state statutory provisions and to the extent that Section 3719.22, Revised Code, would relax the rights and protections guaranteed by the Fourth Amendment, it is unconstitutional and, therefore, void.

The evidence in this case clearly established that the arrest of the defendant took place prior to the institution of any search. The factual question then to be determined by the Court is whether or not reasonable grounds existed for the arrest of the defendant prior to the entry into his room by the officers. The area searched following the arrest was within reasonable limits. The determination of this factual question must, of course, be from the evidence. Here is the evidence bearing on this question.

The evidence, both of the State and the defendant, left no doubt but that the defendant had been placed under arrest prior to the time the search was started of his person or premises and that the search was incident to the arrest.

Defendant's counsel attempted to elicit an admission, which was not forthcoming, from the police officers that the defendant's arrest was secure prior to the conclusion of the search and the finding of the contraband. There is no rule of law that requires officers only to conduct a partial search. The area encompassed in this search was not unreasonable.

The Supreme Court of the United States in the *Ker case* at page 31 stated that the *Mapp case*, however,

. . . established no assumption by this Court of supervisory authority over state courts, cf. *Cleary* v. *Bolger*, 371 U. S., 392, 401 (1963), and, consequently, it implied no total obliteration of state laws relating to arrests and searches in favor of federal law.

The Court further, at page 33 of the *Ker case*, said:

. . . We reiterate that the reasonableness of a search is in the first instance a substantive determination to be made by the trial court from the facts and circumstances of the case and in the light of the "fundamental criteria" laid down by the Fourth Amendment and in opinions of this Court applying that Amendment. *Findings of reasonableness, of course, are respected only insofar as consistent with federal constitutional guarantees. . . .* (Emphasis added.)

In *Draper* v. *United States*, 358 U. S., 307, at page 313, the Court said:

In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act. *Brinegar* v. *United States, supra* ([338 U. S.] at 175). Probable cause exists where "the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves, to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. *Carroll* v. *United*

*States,* 267 U. S., 132, 162 [69 L. Ed., 543, 555, 45 S. Ct., 280, 39 A. L. R., 790.]

The right to seize property, such as heroin in the within case, when the possession of it is a crime, can not be questioned.

In *Harris* v. *United States,* 331 U. S., 145, see 91 L. Ed., 1399, which states in the Headnotes at page 1400 as follows:

11. A distinction exists between merely evidentiary materials which may not be seized either under the authority of a search warrant or during the course of a search incident to an arrest, and those objects which may validly be seized including the instrumentalities and means by which a crime is committed, the fruits of crime such as stolen property, weapons by which escape of the person might be effected, and property the possession of which is a crime.

Illegal possession of heroin would constitute a crime being committed in the presence of police officers.

Reasonable grounds to believe can be predicated upon hearsay evidence received by police officers from persons whom they believe to be reliable. *United States* v. *Heitner,* 149 F. (2d), 105.

A police officer, on cross-examination, may not be required to give the name of the informant. *State* v. *Beck,* 175 Ohio St., 73.

Evidence was submitted by Mr. Cobbs and Mr. Taylor, who had been members of the Cleveland Police Department for a great number of years. At the time involved herein, they were members of the Narcotic Unit of its Detective Bureau. Their testimony was to the effect that several weeks prior to October 24, 1963, they received information from an informant, whom they believed to be reliable, that there was a new narcotic seller in Cleveland; that he had been staying at the Reno Hotel and traveling back and forth from Detroit, Michigan transporting narcotics for sale. He was described as a colored man, medium build, missing front teeth, weighing 135-140 pounds and was 5′6″ or 5′7″ in height; that, upon investigation, it was found that he had moved from the Reno Hotel and they had been informed that a narcotic addict had procured narcotics at a house in the area of East 83rd Street and Quincy Avenue; that she had purchased drugs through a third person who went into a

house in the area of East 83rd and Quincy with her money and returned with drugs which he had purchased; that the seller bore the same description of the man who had been at the Reno Hotel; that at about 7:30 P. M. on October 24, 1963, Officer Taylor, while at the Narcotic Unit office, returned a 'phone call which had been left for him by a female. She lived at 2457 East 83rd Street; that she stated that she remembered Mr. Taylor from having attended high school with him.

*At R. 10:*

"A. The female stated that there was a male living there approximately 24 years old, 5 foot 4, and weighing about 120 to 130 pounds, no upper front teeth, and wore horn rim glasses, and there had been quite a bit of traffic in and out of his room. Also, when he moved in she had noticed aluminum foil roll in his luggage, also a strainer—

"Q. She noticed what?

"A. A roll of aluminum foil in his luggage, and, also a strainer. On the 'phone she mentioned previous to the time we arrested him she was finding paragoric bottles in the trash and also noticed strange odors about the house, like a sweet smell of something, and she had reason to ask me would I come out there and further investigate this matter. She also stated that just before I had called three males had went up to the male's room, that she suspected being involved in some kind of unusual activity—

"Q. She said what?

"A. Three males had just went up to this male's room.

"Q. She told you that on the telephone conversation about the three males?

"A. That's right.

"A. I related the conversation to Detectives Mack and Cobbs.

"A. Detective Cobbs then stated to me that he had received previous information as to a male fitting that description involved in narcotic activity in that same neighborhood but he didn't know exactly the house and he said this possibly was the same, could be the same man."

Officer Cobbs testified:

"A. After discussing, thinking about it, fitting the three

descriptions together, in other words, first one from the Reno, a second one from Miss Bell and a third from the lady at East 83rd the three descriptions fit; yes, sir, we had reasonable grounds to believe it was the same person and that he was committing a felony."

The police promptly left their office for the East 83rd Street Address. The officers testified that they parked their car about two houses south of 2457 East 83rd Street; saw lights were on in a second-story window and a male seated at the table who was identified as "Table Legs," a known addict whose real name was Reuben Hammond. Detective Taylor further testified—

*At. R. 13:*

"A. We then went to the door and at that time the female opened the door. At that time I recognized her from seeing her from high school.

"A. She opened the front door as we approached the entrance of the house, and Detective Mack and Cobbs went to the stairway from upstairs downstairs and she talked to me by the door. She stated that two of three—

"MR. WILLIS: Object.

"THE COURT: Overruled.

"Q. Proceed.

"A. She stated that two of the three men that previously went upstairs was still there. One of them had left during the time, and after she had called us the male that had rented the room came downstairs, went behind the couch and picked up a silver foil package and went back upstairs, and that had happened about ten minutes or so before our arrival."

*At R. 14:*

"A. We then proceed to go upstairs to the door which she had told us was the room of this male and we found the door wide open."

The officers testified that they knocked and entered the room where the defendant was lying on the bed with a towel over his face and that "Table Legs" was seated by the window. The defendant raised himself up on the bed.

"A. I informed him that I was a police officer, that we were

police officers, that we were narcotics officers, and that he was under arrest for investigation in connection with narcotics."

At R. 15:

"Q. So that when you entered that house you did so with intentions of placing Mr. Smith under arrest.

"A. When I entered that room—

"Q. Yes, entered the room.

"A. I entered with that intent, yes."

The defendant inquired as to whether or not they had heard from his Parole Officer. The officers then started a search, searching the person of Mr. Smith, Mr. Hammond and the remainder of the room including a dresser, chest of drawers, a night stand, the bed itself, and a single clothes closet. The defendant was wearing a tee shirt and two pair of trousers and explained the reason for the two pair of trousers was that he was coming out of a narcotic spell and had episodes of chills. The clothes closet was searched last. Defendant's suitcase was taken out of the closet and his articles were handed to him to put into the suitcase after being searched.

They found a cooker cap and a tea strainer which were taken from the dresser. In a waste basket on the floor, they found tin foil which had traces of narcotics on it and the shank of a hypodermic syringe. The cooker consisted of a soot-blackened bottle cap. Hanging on the closet door was a bath towel which was rolled up and when Detective Mack removed it to hand it to the defendant, a tin foil wrapped packet fell from it. The defendant said "Well, okay, you finally found it." There were a number of small tin packs in it, each containing white powder which was identified as "heroin."

The following day, after consulting with the police prosecutor, the defendant was charged with violation of the State Narcotic Drug Act. Counsel for the defendant has contended that the informants from whom the officers received the information did not possess the halo of reliability sufficient to establish probable cause.

In the case of *Wong Sun et al*, v. *United States*, 371 U. S., 471, the Court held, at page 477:

The Court of Appeals held that the arrests of both peti-

tioners were illegal because not based on "probable cause" within the meaning of the Fourth Amendment nor "reasonable grounds" within the meaning of the Narcotic Control Act of 1956. The court said as to Toy's arrest, "There is no showing in this case that the agent knew Hom Way to be reliable" and, furthermore, found "nothing in the circumstances occurring at Toy's premises that would provide sufficient justification for his arrest without a warrant." . . . .

The testimony herein was that the police knew their informants to be reliable because of previous reliable information they had received from them. In the testimony of one of the officers, a serious question was raised as to the information received from one of the informants since on the second hearing, it was shown that she was confined in jail at the time it was first testified she gave the information. This alone does not establish that the informant was not reliable nor that information was not actually received. The opinion as to reliability is to be determined by the police officers in the first instance. As indicated herein, it was based upon prior occurrences which impelled them to the belief as to the informant's reliability. The Court should not substitute his opinion in that respect for that of the police unless, as in the *Wong Sun case*, there was no showing that the officer knew the informant to be reliable. Some would say that a drug addict could never be considered a reliable informant. However, the police, not the Court, have seen the informant, know whether previous statements have been found to be true, observed his physical condition and mental state, knew something about his education and intelligence—or lack of it—and other circumstances which, in the belief of the police officers, would impel a belief as to the reliability of an informant.

The circumstances found at the scene, that is, the sight of a known addict in the window of the defendant's room, the statement of the resident at that home of the recent removal by the defendant of a concealed tin foil package of the type in which heroin was usually contained, substantially contributed to the belief that probable cause existed justifying the immediate arrest without a warrant.

In the *Wong Sun case*, at page 479, the Court said:

. . . It is basic that an arrest with or without a warrant must stand upon firmer ground than mere suspicion, see *Henry* v. *United States*, 361 U. S., 98, 101, though the arresting officer need not have in hand evidence which would suffice to convict. The quantum of information which constitutes probable cause—evidence which would "warrant a man of reasonable caution in the belief" that a felony has been committed, *Carroll* v. *United States*, 267 U. S., 132, 162—must be measured by the facts of the particular case. . . .

It is the finding of the Court that the police officers in question possessed the necessary quantum of information which constituted a probable cause—evidence which would warrant a reasonable man to believe that a felony had been committed, even was being committed, prior to their entry into the defendant's room.

The liberality of interpretation of the constitutional provisions hereinbefore set forth are not and can not be to the extent of eliminating all searches except when made pursuant to a valid search warrant. It is, of course, only the unreasonable search and seizure made with or without a search warrant that is prohibited. This is in accordance with the word "unreasonable" as contained in the Constitution. The Constitutions themselves prohibit the *"unreasonable searches and seizures."*

While a person's home should not be entered, nor his person, papers or possessions searched without the judicial sanction and by the procedure outlined in Sections 2933.22 through 2933.31, inclusive, Revised Code, the facts of the within case come within the exception thereto—based upon necessity—when a search is made incident to a lawful arrest. The law rightfully provides with the exceptions herein referred to that a decision to enter and search should be a judicial and not a police decision.

The Court finds that the arrest of the defendant was legal, the contemporaneous search was also legal, and that the defendant's motion to suppress should be and is hereby overruled.