**William Arthur WILLIAMS, Plaintiff in Error,**

**v.**

**The STATE of Oklahoma, Defendant in Error.**

**No. A–12209.**

Criminal Court of Appeals of Oklahoma.

Nov. 16, 1955.

Rehearing Denied Dec. 21, 1955.

Murphy & Booth, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

Here the defendant, William Arthur Williams, was charged with and convicted of the offense of possession of a large quantity of intoxicating liquor, of various brands, such as Old Henry Clay, J. W. Dant,

Colonel Lee, Birchbrook, Sunnybrook, and Haven Hill, which was found in a car parked in a parking yard behind a grocery on East Twenty-third Street, in Oklahoma City.

A jury trial was waived and the accused was tried before the court, who entered judgment finding the defendant guilty as charged, and assessed punishment at incarceration in the Oklahoma County jail for thirty days, and to pay a fine of $150 and costs. Appeal has been duly perfected to this court.

The record discloses that prior to trial counsel filed a motion to suppress. The one question presented by the appeal is whether the trial court erred in overruling the motion.

As asserted by counsel for the defendant in his reply brief, the purpose of a motion to suppress is to determine the legality of a search, and if it is proven that the search was illegal, then that should end the matter as to the evidence obtained by the illegal search. That is to say, if the evidence on motion to suppress clearly shows the search to have been illegal, that question is then and there settled so far as the particular case is concerned, and the State, if the motion is overruled, on trial may not produce further evidence and retry the issue. The question presented is one of law to be determined by the court out of the presence of the jury.

It is well settled that where a motion is filed to suppress evidence secured by service of a search warrant, or because of a lack of a search warrant, the burden rests on defendant to establish the insufficiency of the affidavit for the warrant, or to show a search without authority of a search warrant, to establish the illegality of the search. See Reutlinger v. State, 43 Okl.Cr. 261, 277 P. 950; Sears v. State, 79 Okl.Cr. 437, 156 P.2d 145; O'Dell v. State, 80 Okl.Cr. 194, 158 P.2d 180; Franklin v. State, Okl.Cr., 279 P.2d 1116; Fulbright v. State, 96 Okl. Cr. 36, 248 P.2d 651.

In the within case it was contended that the officers without benefit of a search warrant, searched and found the intoxicating liquor described in the information; that the search was not made as an incident to a lawful arrest, and was contrary to the Constitution of the State of Oklahoma.

Defendant testified on his motion to suppress, and produced one additional witness in support thereof.

Robert O. Rusche, policeman from the Oklahoma City Police Department, testified that on June 11, 1954, he saw the whiskey described in the information; that it was stacked from the floor boards up to and on the back seat of an old 1941 Chevrolet coach automobile that was parked in back of the Stockton Grocery in the 2300 block on Eastern Street, being the first block south of Twenty-third Street. He said that he recognized the lugs as whiskey lugs. Witness testified that he and another scout car officer, J. W. Rankin, were stopped, giving directions to a passerby who was trying to find his way to the Turner Turnpike, and that they noticed what appeared to be a prowler walking around an old car in the alley behind the Stockton Grocery, and he and Officer Rankin "went up to check the car to see if it might have been tampered with or to see if someone might have attempted to steal this car, and we walked up to the side of it." In the meantime the apparent prowler had hurriedly gotten in another car and driven away.

Witness further stated that it was daylight, being between 4 and 6 o'clock in the afternoon. He said that there were a number of other cars parked around the old Chevrolet; that as he looked through a window of the Chevrolet he observed "a bunch of whiskey in the back in there in lugs, packaged up." Said he: "It was wrapped up in lug wrappers, yes, sir, with the notation on the side, it had small writing, printing, such as you find on most lug wrappers, they have the brand, capital letters on the outside, so they can tell exactly what kind is inside." He said the lettering was "in printing, using two big letters". He denied that the whiskey was covered by a blanket, stating that the blanket was pushed forward toward the seats. Witness said that several of the lugs had been broken open and that it was either Haven Hill bourbon, or Embassy Club bourbon on which the wrappers were broken.

On cross-examination by the county attorney, witness said that the broken lugs of Haven Hill were found underneath the blanket after they opened the left front door which was unlocked. He further stated that later on the defendant herein appeared at the police station and claimed ownership of the whiskey and Chevrolet car.

On re-direct examination by counsel for defendant, witness Rouche testified as follows:

"Q. Now, what was on these wrappers in the back; did they say Old Henry Clay or J. W. Dant, or anything like that? They didn't say Old Henry Clay whiskey, or J. W. Dant whiskey, or anything like that? A. No, sir, it would have the first initials of the brand, printed on there, usually.

"Q. Then, if it had been Old Henry Clay, it would have been OHC, wouldn't it? A. Or Clay.

"Q. Or Clay. You didn't have a warrant of any kind? A. No, sir."

The defendant testified and admitted ownership of the whiskey set out in the information, and of the automobile in which it was found. He denied seeing the officers at any time he was near the Chevrolet in the afternoon that the officers searched his parked car. He said the car had been parked back of the grocery for over a month without being moved.

No other testimony was heard, and the court overruled the motion to suppress. This was on December 1, 1954. Thereafter the case came on for trial on January 5, 1955 and a jury was waived. It was stipulated between the parties that the testimony of Robert O. Rusche would be the same on trial as on hearing of the motion to suppress.

J. W. Rankin testified for the State. His testimony was substantially as that of Officer Rusche, except that he said some of the whiskey was in lugs but that he could see whiskey bottles and whiskey in the bottles. He also said that he first observed a man walking across a field from Twenty-second Street and through weeds when he could have walked on a sidewalk, and then observed him around the cars parked behind the Stockton grocery and that such caused him and Officer Rusche to investigate. They looked through the car window. Said he: "I observed what appeared to be lugs of whiskey; it had all the earmarkings and indications of lugs of whiskey. It was marked on the lugs in a dark crayola the names, like Colonel Lee, and then one-half. Colonel Lee, and something else."

The defendant testifying admitted that the whiskey in question was his, but denied that the officers could have seen it without opening the car door and lifting the blanket.

This completed the evidence, all obtained by reason of the search. The court entered judgment finding defendant guilty, as charged.

Was the testimony of Officer Rusche sufficient to justify the court in overruling the motion to suppress?

It will be noted that witness Rusche said that the lugs that he observed had the brands in capital letters on the outside so that one could tell what was inside. Any doubt as to what the officers meant was dispelled by his re-direct examination by defense counsel, and quoted above.

There have been many cases from this court where the question raised has been treated. See Davenport v. State, 71 Okl.Cr. 91, 108 P.2d 549, and Paty v. State, 97 Okl.Cr. 111, 259 P.2d 330. A late case reviewing some of the authorities is that of Dillon v. City of Tulsa, Okl.Cr. 273 P. 2d 145. The reasoning in the Dillon and cases cited therein answer the question raised, and support the action of the court in overruling the defendant's motion to suppress.

The judgment appealed from, in light of the foregoing, must be and is affirmed.

JONES, P. J., and BRETT, J., concur.