138 So.2d 474

**Hobert Ray SMITH**

v.

**STATE.**

**3 Div. 82.**

Court of Appeals of Alabama.

Feb. 27, 1962.

———◆———

W. Clarence Atkeison, Prattville, for appellant.

MacDonald Gallion, Atty. Gen., and Leslie Hall, Asst. Atty. Gen., for the State.

HARWOOD, Presiding Judge.

This appellant stands convicted of rape, his punishment having been fixed at 18 years in the penitentiary. The evidence introduced by the State tends to show that this appellant and his family were neighbors of the prosecutrix and her family. The two families had been on friendly terms for a long time, and the prosecutrix and her brothers and sisters addressed the appellant as "Uncle Hobert." Mr. and Mrs. Rawlinson, the parents of the prosecutrix had been in Montgomery during the pre-Christmas season selling Christmas trees. Prosecutrix, who is 14 years of age and her younger brothers and sisters, were left in the Rawlinson home at this time.

The evidence further shows that the prosecutrix is mentally retarded and suffers from curvature of the spine and subnormal vision.

Upon the return of Mr. and Mrs. Rawlinson to their home about 9:45 P.M., on 21 December 1960, Mrs. Rawlinson entered the den and discovered the appellant on top of the prosecutrix on a sofa. She pulled the appellant off of her daughter and onto the floor. The appellant's pants were unzipped and his privates were exposed. Her daughter was blue and semi-conscious. The appellant sat up and she slapped him and he said, "Get the gun and shoot me, kill me before I leave." His pants were bloody in front.

The prosecutrix did not have on any pajama bottoms and she was bloody around her private parts and her mouth.

Mrs. Rawlinson testified that as she entered the den the appellant was saying to the prosecutrix, "If you say another thing, God damn you, I'll kill you." Mr. and Mrs. Rawlinson devoted their attention to the unconscious prosecutrix and the appellant left the house.

A medical witness testified as to the examination of the prosecutrix and of her injuries.

The prosecutrix testified that the appellant came to her home on the night in question and asked where her Daddy was. She replied that her Daddy was in Montgomery. The appellant then came into the house "and started getting on top of me" and started pulling her pajamas off. The prosecutrix testified to facts clearly indicating that the appellant had sexual intercourse with her.

She further testified that the appellant told her that if she screamed again he would slap the ———— out of her.

Mr. Robert Turner, chief deputy sheriff of Autauga County, testified that on the night in question he went to the appellant's home, placed him under arrest and brought him back to the jail in Prattville. At the time of the arrest, the appellant was informed that he was being arrested for the offense of rape. Mr. Turner did not have a warrant with him at this time. After proper predicate as to voluntariness had been established, Mr. Turner testified that when he informed the appellant he was accused of rape, the appellant stated that he could prove where he had been since he had left his work that afternoon.

The next day, Mr. Turner and two other deputy sheriffs, and Mr. Glenn Curlee the solicitor, interviewed the appellant. After a full predicate as to voluntariness, Mr. Turner testified that prior to this interview the appellant was advised that he did not have to make a statement, that any statement he made could and probably would be used against him, and he was further advised that he could have counsel before he made any statement. After this preliminary the appellant then stated that he got off from work about 7 P.M., and before leaving his place of employment he had a drink with one of his fellow workers. On the way to downtown Montgomery, he stopped in a restaurant and had another drink. He then proceeded to a jewelry store in Montgomery and purchased a "bridal set" of rings, and this is the last thing he remembers until he found himself in jail about 11:30 P.M., that night.

Mr. Turner further testified that the appellant told him that he had changed clothes at his home. After placing the appellant in jail Mr. Turner returned to the appellant's home to obtain the clothing. This clothing, however, had been taken by appellant's brother who apparently told Mr. Turner in a telephone conversation that the clothing was in the brother's automobile which was parked in front of his house. Mr. Turner testified that the appellant's brother "willfully" gave him the clothes and he obtained them from the brother's automobile, the brother having already gone to bed when he arrived at his house.

The evidence presented by the defense was directed toward establishing the appellant's plea of not guilty by reason of insanity, and toward establishing the good reputation of the appellant.

In his own behalf the appellant testified substantially as to the same facts as he had related them in his statements to the investigating officials. The appellant on cross-examination stated he had not been mistreated in any manner during his interview with Mr. Curlee and the deputy sheriffs.

Counsel for appellant has filed a lengthy brief in which he argues numerous errors affecting this record.

Counsel first argues the evidence presented by the State was insufficient to show that the appellant's carnal relations with the prosecutrix were accomplished by force and against the will of the prosecutrix.

It is our opinion that the threats by the appellant toward the prosecutrix, testified to both by the prosecutrix and her mother, when taken in connection with the prosecutrix's mental and physical condition and her injuries, were entirely sufficient to justify the jury in inferring that the appellant's nefarious act was accomplished by force and against the will of the prosecutrix.

Counsel urges that error resulted from the action of the court in sustaining the State's objection to the following question propounded to the State's witness, Mrs. Rawlinson, on her cross-examination:

"Q Do you feel so unfriendly toward the defendant, Mr. Smith, at this time as to wish to see an innocent man convicted?"

The record shows that immediately prior to this question, Mrs. Rawlinson testified that she had employed Mr. Taylor as a special prosecutor and that she had been active in the prosecution of the appellant. She further testified that she carried unfriendly feelings toward the appellant at the time she was testifying. When a witness declares his bias or interest, no purpose is served in further cross-examination relative to his feelings. Nations v. Harris, 214 Ala. 339, 108 So. 29. No error resulted in the above ruling.

Furthermore, the question as framed is double barreled and argumentative in combining Mrs. Rawlinson's unfriendliness toward the appellant with her wishes to see an innocent man convicted.

In the trial below the defense objected strenuously to any testimony concerning the appellant's clothing which was obtained by deputy Turner as above set out, and as to the testimony of the State's toxicologist concerning his examination of the clothing, and the blood found thereon.

Since Mr. Turner did not have a search warrant at the time he obtained appellant's clothing, counsel for appellant argues that error resulted from these rulings in view of the doctrine recently announced in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081 which imposed the exclusionary rule on State courts, regardless of the previous rules of the State courts in regard to evidence illegally seized.

As a requirement of due process regarding evidence illegally seized, we cannot see that the doctrine of the Mapp case, supra, is in any wise controlling of the question we are now considering. A search

implies a probing into secret places for that which is hidden; it implies force, actual or constructive; or a forceable dispossession of the property of the one by exploratory acts. Kelley v. State, 39 Ala. App. 572, 105 So.2d 687.

■ The evidence in the present case discloses that the clothing was obtained by Mr. Turner from the automobile of the appellant's brother, after a telephone conversation with said brother. No unlawful seizure can reasonably be read into this factual situation.

Another point or points argued at length by counsel for appellant, related to the fact that the chief deputy Turner did not have a warrant for appellant's arrest at the time he did arrest him; that the appellant was not taken before a magistrate for some three weeks after his incarceration in the Autauga County jail; and that neither the Governor or the Chief Justice of the Supreme Court of Alabama were notified of appellant's arrest pursuant to the provisions of Section 161, Title 15, Code of Alabama 1940.

Counsel for appellant seeks to invoke the doctrine of Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479. This case concerned a prosecution of a resident of the District of Columbia in the Federal courts, and the United States Supreme Court on review held that a confession was inadmissible if obtained during a period of "unnecessary delay" in presenting the arrestee to a committing magistrate.

No question of the admission of a confession is involved in this case, since the statements made by the appellant contained nothing confessory in nature, but were merely to the effect that he did not remember anything from the time he purchased the rings until he awoke some hours later in the Autauga County jail.

■ As we view it, the alleged conduct of the officers now complained of can at most relate only to the proper processing of an arrest and delay in the preliminary examination of the accused before a magistrate. Without conceding any validity to counsel's contentions, no objections raising these points were made in the trial below, and to be available, objections of this nature must be taken before pleading the general issue by some motion or plea. Dowdell v. United States, 221 U.S. 325, 31 S.Ct. 590, 55 L.Ed. 753.

■ It appears that while there was considerable testimony concerning the condition of the appellant's clothing, the blood spots thereon and etc., this clothing was never actually offered in evidence. A square paper carton apparently containing the clothing was placed before the jury on a counsel table. In view of the predicates laid concerning the clothing, and the relevancy of this evidence to the issues, we are clear to the conclusion that had this clothing been offered in evidence the court would properly have admitted the same. No error resulted therefore from the fact that a pasteboard carton, which we infer from the record contained this clothing, was placed as aforestated.

Those charges which were affirmative in nature were properly refused by the lower court under the developed evidence. The principles sought to be enunciated in the remaining charges requested by the appellant in writing were covered in the court's oral charge and no error resulted in their refusal.

Affirmed.