STATE OF IOWA, petitioner, v. WARREN J. REES, Judge, respondent.

No. 51826.

(Reported in 139 N.W.2d 406)

814

JANUARY 11, 1966.

REHEARING DENIED MARCH 7, 1966.

Jack M. Fulton, County Attorney, and Thomas J. Wilkinson, Jr., Assistant County Attorney, for petitioner.

Robert M. Fassler and Robert C. Nelson, both of Cedar Rapids, for respondent.

SNELL, J.—This cause comes before us on certiorari to review an order of the trial court sustaining a motion to suppress evidence claimed to have been secured by an unreasonable search and seizure.

The case arose from criminal cause No. 20814 entitled State of Iowa v. Joseph W. Grant, Jr., in Linn District Court.

On August 15, 1964, a fire was reported at 324 Seventh Street, S.E., in Cedar Rapids. The fire department responded and extinguished the flames at 5:50 a.m. The building involved was being used as a printing plant operated by Citizen's Publications, Inc., lessee. One Joseph W. Grant, Jr., the defendant in the criminal action, had an interest in the business and occupied an apartment on the premises.

Immediately after the fire had been extinguished the fire chief and his employees, a city electrical inspector, a foreman of the light and power company, a deputy state fire marshal, an agent of the National Board of Fire Underwriters, and others entered the premises for purpose of investigating the cause and origin of the fire. The investigation was prolonged and the building reentered several times as a part of a continuing investigation. The defendant said no search warrant was ever requested or secured. However, there is no claim of harassment, abuse, subterfuge, force or even objection.

Based in part at least upon the evidence obtained by this extended investigation, the Linn County grand jury returned an indictment charging accused with the crime of arson. He was arraigned and entered a not guilty plea. Prior to trial he filed the subject motion to suppress testimony of grand jury witnesses, Jesse G. Hunter (Chief of Cedar Rapids Fire Department), Kenneth A. Anderson (a fire department captain), James R. Kuta (city electrical inspector), Harry Billings (an employee of Iowa Light and Power Company); and M. D. Huffman (an agent in the Arson Department of the National Board of Fire Underwriters). By his motion accused requested the court to suppress all evidence gained by these persons as a result of their investigation in connection with the fire.

Pursuant to court order there was a hearing on the motion, at which time accused appeared and testified, the State offering no evidence. The indictment, with minutes attached, is made a part of the record for review. The trial court promptly entered order sustaining the motion, the material portion of which provided as follows: "* * * All evidence obtained, and all testimony of witnesses having to do with any search of the premises conducted subsequent to 5:50 a.m. of August 15, 1964, would be,

therefore, found to be inadmissible, and such is the Order, Judgment and Ruling of the court upon the motion to suppress."

The foregoing constitutes substantially the whole record before us.

I. Accused contends certiorari will not stand to test an order of court suppressing evidence in a criminal case. We do not agree. In Hohl v. Board of Education, 250 Iowa 502, 94 N.W.2d 787, we recognized a tendency to broaden the scope of certiorari where no appeal is permitted, and substantial justice would not be done unless review by certiorari be allowed.

In State ex rel. Fletcher v. District Court, 213 Iowa 822, 238 N.W. 290, 80 A. L. R. 339, we recognized the common-law right of the State to review by certiorari in criminal cases under certain circumstances.

A review of the law issue here presented is fully warranted. If this review were to be refused the State, if correct in the position taken, would be faced with a prosecution of the accused unjustly and irreparably deprived of material evidence. See State ex rel. Rankin v. Peisen, 233 Iowa 865, 868, 10 N.W.2d 645; State v. District Court, 248 Iowa 250, 253, 80 N.W.2d 555.

II. In urging illegal action by the trial court justifying this review, the State contends accused had no standing to challenge the search and seizure.

In Jones v. United States, 362 U. S. 257, 80 S. Ct. 725, 4 L. Ed.2d 697, 78 A. L. R.2d 233, officers searched an apartment, seized some narcotics, and arrested Jones, there present, who was merely a friend and permissive guest of the absent occupant. Upon being criminally charged Jones moved to suppress the evidence claiming it was illegally obtained. The court held he was a person within the class entitled to privilege against unreasonable search and seizure, and had standing to challenge any evidence found or seized.

The record now before us discloses accused not only had an interest in the business operated upon the subject property, but also had and occupied an apartment somewhere on the premises. He was clearly a person aggrieved by the search. Furthermore, his indictment subsequent to the search, based in part at least

upon the evidence so obtained, gave meaning to his status as a person aggrieved.

III. The statutory authority for investigation into the origin and cause of fires is found in chapter 100, Code of Iowa, 1962.

Section 100.1, subparagraph 2, requires an investigation by the state fire marshal.

Section 100.2 provides: "The chief of the fire department of every city or town in which a fire department is established * * * shall investigate into the cause, origin and circumstances of every fire occurring in such city * * * and determine whether such fire was the result of natural causes, negligence or design. The state fire marshal may assist * * * superintend and direct * * *."

Section 100.3 requires a report to the state fire marshal.

Section 100.9 provides that when the fire marshal is of the opinion that there is evidence sufficient to charge any person with arson or related offenses he shall cause arrest and prosecution and shall furnish to the county attorney all evidence.

Section 100.10 authorizes the fire marshal and his subordinates to enter any building and examine the same and the contents.

Section 100.12 authorizes entry and examination by the chief of the fire department.

Under these statutes the entry and examination by the officers was legal and mandatory.

What was done here is exactly what is required by the statutes, i.e., investigation, determination of opinion as to cause of the fire, prosecution and furnishing of evidence.

The trial court held that any evidence obtained after the date and time of the extinguishment of the fire would be inadmissible as having been the fruits of an unlawful search and seizure.

Here there was no unlawful search and seizure. What was done was pursuant to statute. We use the word unlawful as meaning without statutory support or in violation of statute. The question is, was it unreasonable and violative of constitutional limitations?

Statutes and ordinances authorizing civil inspections have long been acknowledged and sanctioned as incident to the police power of a state or municipality but they must be within constitutional limits. Hubbell v. Higgins, 148 Iowa 36, 46, 126 N.W. 914, Ann. Cas. 1912B 822; State v. Strayer, 230 Iowa 1027, 299 N.W. 912; Town of Grundy Center v. Marion, 231 Iowa 425, 435, 1 N.W.2d 677, and Davis, Brody, Wisniewski v. Barrett, 253 Iowa 1178, 1180, 115 N.W.2d 839.

In Frank v. Maryland, 359 U. S. 360, 365, 79 S. Ct. 804, 808, 3 L. Ed.2d 877, 881, it was held that a health officer under the authority of a city ordinance could go on property at reasonable times without the aid of a search warrant for the limited purpose of an inspection to ascertain whether conditions are present which do not meet minimum standards and might be inimical to the health, welfare and safety of the public.

The case recognizes two basic constitutional protections.

"(1) the right to be secure from intrusion into personal privacy, the right to shut the door on officials of the state unless their entry is under proper authority of law, and (2), and intimately related protection is self-protection: the right to resist unauthorized entry which has as its design the securing of information to fortify the coercive power of the state against the individual, information which may be used to effect a further deprivation of life or liberty or property. Thus, evidence of criminal action may not, save in very limited and closely confined situations, be seized without a judicially issued search warrant."

Mr. Justice Frankfurter traced the history of and necessity for certain inspections and held there was no violation of due process.

A well reasoned opinion clearly in point appears in Dederick v. Smith, 88 N. H. 63, 66, 184 A. 595, 597, 598, a New Hampshire case decided in 1936. Although prior to Mapp v. Ohio, discussed infra, the reasoning is not in conflict therewith.

Plaintiff sought an injunction restraining the state veterinarian "his aiders, abettors, agents and employees" from trespassing upon the property of plaintiff or from entering or breaking into her premises to test plaintiff's cattle for bovine tubercu-

losis. The defendant had requested plaintiff's permission to make the tests. Plaintiff had refused. Defendant with assistants forced entrance. Because of plaintiff's objections extra trips for injection of testing materials were necessary. Defendant's testing and actions were pursuant to statute.

Plaintiff claimed (1) defendant was without authority to break and enter plaintiff's barn over her protest or commit any trespass without judicial authorization. (2) Plaintiff was entitled to a prior hearing. (3) Defendant's entry was without due process of law, and (4) the statute authorizing defendant's procedure was unconstitutional. The court said:

"The contention of the plaintiff that the statute does not authorize an entry without the supplementary aid of judicial process in the nature of a search warrant is without merit. On the contrary, the act was apparently designed to dispense with the necessity of judicial process in its enforcement. The statute, in effect, gives to the named officers a blanket search warrant which permits them to investigate all premises where cattle are kept. To the validity of this warrant the consent of the owner is not necessary and authority to use such force as may be necessary to effect an entrance to buildings which have been locked for the purpose of preventing an investigation is necessarily implied.

"The specific claim of the plaintiff that before such entry she 'was entitled to a hearing as to whether or not the keeping by her of cattle that had not been tested for tuberculosis came within the provisions of P. L., ch. 187, sec. 46, as amended, and was within the police power of the state,' finds no support in the provisions of the statute or the established procedure in regard to the issuance of search warrants. * * *."

The statute was approved as a valid exercise of police power and its constitutionality approved. The statute was held reasonable and unobjectionable.

In discussing the 14th Amendment the court cited numerous authorities and said:

" 'Neither the amendment, broad and comprehensive as it is, nor any other amendment was designed to interfere with the power of the State, sometimes termed its "police power", to prescribe regulations to promote the health, peace, morals, edu-

cation and good order of the people, and to legislate so as to increase the industries of the State, develop its resources and add to its wealth and prosperity.' Barbier v. Connolly, supra [113 U. S. 27, 31, 5 S. Ct. 357, 359, 28 L. Ed. 923].

" 'It cannot be supposed that the States intended, by adopting that amendment, to impose restraints upon the exercise of their powers for the protection of the safety, health, or morals of the community.' [Citations]

"The contention of the plaintiff that she had a constitutional right to notice and an opportunity to be heard before a judicial tribunal before her cattle could lawfully be tested without her consent is, therefore, without foundation. * * * [Loc. cit. page 71 of 88 N. H., page 600 of 184 A.]

"The statute explicitly gave to the defendant, as the lawful agent of the commissioner of agriculture, specific authority to enter the plaintiff's 'premises' for the purpose of investigating the existence of infectious disease amongst her cattle. As above stated, we think that this necessarily included authority to break into any barn from which the plaintiff undertook to exclude him or his agent. This is in accordance with the general rule in such cases which has been stated, as follows: 'One who is privileged to enter land' pursuant to legislative duty or authority 'is further privileged to break and enter a fence or other enclosure or a dwelling or other building if to do so is reasonably necessary or is reasonably believed by the actor to be necessary to accomplish the purpose of the privilege.' " (Loc. cit. pages 71 and 72 of 88 N. H., page 601 of 184 A.)

Plaintiff's case was dismissed.

In State v. Mehlhaff, 72 S. D. 17, 29 N.W.2d 78, the Supreme Court of South Dakota considered the admissibility of evidence unrelated to a search warrant. The defendant was convicted of larceny. On appeal one of his assignments of error related to search and seizure. The court took notice of both the Federal and State Constitutions and held that to constitute an unreasonable search and seizure two facts are essential, namely: (1) Entry by the witnesses upon defendant's property, and their presence there must have been unlawful, and (2) discovery of

the facts to which the witnesses testified must have been unlawful.

Defendant's conviction was affirmed.

The reasoning of the court was sound and appropriate to the case before us.

In the case at bar except for the fact that the evidence was obtained pursuant to a statutory mandate instead of a search warrant there is not a word in the record to support the order of suppression.

IV. It is argued that when the investigation uncovered evidence of crime its investigatory status ended; that the statutory authority came to an end; that it became an accusatory search and could be supported only by a search warrant. We do not agree. The statutes clearly contemplate the discovery of evidence of crime, the arrest and prosecution of the person to be charged, and the delivery of all evidence, names of witnesses and all information to the county attorney. The statutory authority of the investigating officials did not terminate when evidence of arson was found.

We recently considered the changing concept during a search. See State v. Hagen, 258 Iowa 196, 205, 137 N.W.2d 895. In that case the original entry was a trespass and was illegal. We said: "A search is good or bad when it starts and does not change character from its success. * * * An unlawful search taints all evidence obtained at the search or through leads uncovered by the search." We held the initial entry unreasonable and the search that followed unlawful.

In the case at bar the contrary appears. The original entry was lawful and mandatory under the statute. No one contends that the original entry was unreasonable. As we said in Hagen, supra, it did "not change character from its success." The entry did not become unlawful or the search become unreasonable just because evidence of arson was found. There is nothing in the record before us, except the finding of evidence of arson, to support a holding that there was a change from a lawful to an unlawful procedure.

The fact that an investigation becomes accusatory does not make it unconstitutional. It does go beyond proper limits

when it extends into fields unrelated to the authorized investigation or is unduly prolonged over the objection of the accused. Not even a search warrant is good indefinitely. See section 751.12, Code of Iowa. The question is not before us but it may be that the defendant could have, after a reasonable time for completion, terminated the investigation by telling the investigators to stay out. In that event further search and seizure would have required a search warrant. However, the record is silent as to any search beyond the limits of the statutory mandate or over any objection, timely or otherwise, by the defendant.

V. We find nothing in the Constitution of the United States, the pronouncements of the United States Supreme Court, the Constitution of the State of Iowa or our pronouncements requiring the suppression of the evidence obtained during the search involved.

Amendment 4 to the Constitution of the United States provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Amendment 5 protects, among other things, against coerced self-incrimination.

Amendment 6 to the Constitution of the United States provides for procedural guarantees and, among other things, the right to counsel.

Amendment 14 provides for due process.

These are the basic constitutional provisions relating to criminal prosecutions.

Amendment 6 is not involved in the case before us.

Section 8, Article I, of the Constitution of the State of Iowa is identical in its provisions and almost identical in its wording to Amendment 4 to the Constitution of the United States. Other provisions in our State Constitution provide protection in a manner comparable to our Federal Constitution.

The question before us is the reasonableness of the search and seizure of evidence.

The trial court apparently proceeded from the premise that a reasonable search and seizure can only proceed from the foundation of a search warrant issued on an affidavit showing probable cause. We do not think that is what the Constitution says nor what the cases hold.

Mapp v. Ohio, 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed.2d 1081, 84 A. L. R.2d 933, holds that evidence obtained by unconstitutional search is inadmissible. The rights guaranteed by Amendment 4 are enforceable against the states by the Due Process Clause of Amendment 14. With these basic rights of the people no one has any legitimate quarrel. However, neither the Constitution nor the cases decided thereunder say that there can never be a legal or reasonable search without a warrant. Neither do they say that evidence obtained during a legal investigation is inadmissible. The constitutional guarantees do protect against indiscriminate and unreasonable searches and against warrants issued without probable cause.

It is the indiscriminate search and seizure without benefit of a warrant issued on affidavit of probable cause that is proscribed. Nowhere do we find any proscription against the use of evidence obtained during a reasonable and legally authorized investigation. It is unreasonable and illogical to say that when officers are carrying on a legal or as in this case a mandatory investigation they must stop and get a search warrant before they can seize and later use the evidence for which they were making their original investigation.

The present case is a far cry factually from Mapp.

In Mapp a reenforced group of seven or more officers, in search of a person wanted for questioning on an unrelated matter and for possible evidence of an unrelated offense, forcibly entered a house over the objection of defendant, pretended to have a warrant, manhandled the defendant and refused to permit defendant's lawyer to enter or see defendant. Proceeding "in this high-handed manner" the officers searched thoroughly and incident thereto found some obscene materials for possession of which defendant was ultimately convicted.

If there was anything to justify the "high-handed" procedure of the police it does not appear from the opinion. The Supreme Court held the evidence so obtained inadmissible. With that we agree but it does not follow that there is anything sacrosanct about the words "search warrant", the need therefor or the use thereof. The constitutional test is the reasonableness of the search and the propriety of the authority under which the search is made. The tests are strictly construed. If made under authority of a search warrant the warrant must be based on an affidavit of probable cause. In other words, there must be some legal reason why the officers are there.

In the case at bar there was a legal reason why the officers were there. There had been a fire. An investigation was required by the statute. It was made. There is no claim that there was any violation of the statute.

VI.  Amendment 4 to the Constitution of the United States protects against unreasonable search and seizure. It protects the right of privacy against unwarranted invasion. It prohibits the issuance of warrants except upon oath or affirmation showing probable cause. It creates no magic in the use of the words "search warrant". A search warrant without the constitutional prerequisites is invalid but there is nothing in the Constitution that says there can be no valid search under authority other than a search warrant.

In State v. Shephard, 255 Iowa 1218, 1226, 124 N.W.2d 712, we said:

" 'The restrictions upon searches and seizures were obviously designed for protection against official invasion of privacy and the security of property. They are not exclusionary provisions against the admission of kinds of evidence deemed inherently unreliable or prejudicial.' * * *

"The 4th and 14th Amendments are not designed to help a guilty party escape the consequences of his act. Their purpose is to protect a person and his property from arbitrary and unreasonable searches and seizures. It is the 'right of privacy' that is protected."

What is proscribed by the amendment is not the seizure of incriminating evidence but the unreasonable invasion of the

right of privacy. If the search is unreasonable and without authority then in that event seizure of the evidence is without authority and the evidence is inadmissible.

In the case at bar the officers had a right to investigate. There is nothing unreasonable about searching for the cause of a fire. The evidence found was the work product of a reasonable and statutory investigation. When evidence is so found it is not necessary for officers to desist from further action and wait for a search warrant before they may pick up what they have found, or testify as to what they have seen, or complete their investigation.

The test is the reasonableness of the search under proper authority and not the source of the authority under which the search is made. A reasonable search mandatory under a legislative enactment is clothed with as much dignity and is entitled to as much consideration as a search under a warrant issued by a Justice of the Peace. It would be illogical to say that the evidence would have been admissible if seized under a search warrant but inadmissible if seized under the statute. This assumes, of course, that the entry was reasonable and legal and no one contends otherwise. Within the constitutional limitations as to reasonableness the legislature may and has authorized such an investigation as was made here.

VII. A confession obtained by police interrogation when the accused is denied the right to counsel is inadmissible. Escobedo v. State of Illinois, 378 U. S. 478, 492, 84 S. Ct. 1758, 1766, 12 L. Ed.2d 977, 987. The case involved the right to counsel and the protection against self-incrimination under Amendment 5. The interrogation was accusatory and the accused's rights under Amendment 5 were violated. The distinction between a routine investigation and an accusation under Amendment 5 is not applicable to the right to privacy under Amendment 4. Under Amendment 4 if the search is reasonable and lawful the fact that it becomes accusatory by the finding of incriminating evidence does not make it invalid.

Escobedo, supra, is not relevant to our problem, except to note the distinction between the rights involved and what was there said. "Nothing we have said today affects the powers of

the police to investigate 'an unsolved crime,' [Citation] by gathering information from witnesses and by other 'proper investigative efforts.' [Citation]"

VIII. The burden of demonstrating that evidence has been illegally procured normally devolves upon the accused in a motion to suppress such evidence. State v. Shephard, supra, loc. cit. 1222 and cases cited. We are not now considering questions of consent involved in the Shephard case or voluntariness of confessions involved in State v. Holland, 258 Iowa 206, 138 N.W.2d 86. What we have here is a case where evidence has been suppressed because obtained as a part of a statutory investigation rather than under a search warrant. The basic premise or foundation stone supporting a search under a warrant is an affidavit of probable cause. The Constitution so provides. The whim, caprice or curiosity of officers will not suffice. In other words, the reason must appear and the search must be reasonable. That does not make procedure under a document called a search warrant exclusive.

The foundation for procedure after a fire is the statute. The legislature has said that when there has been a fire there shall be an investigation. There is nothing in the Constitution that says that the legislature may not, within the limits of reasonableness and by positive mandate, direct a search upon the happening of an event of such public interest as a fire. The fire is the reason and the statute is the authority for the procedure.

It is unrealistic and unsound to say that when a constitutionally reasonable investigation or search has been directed by the legislature upon the happening of a certain event, i.e., a fire, there must also be a search warrant that can only be issued upon affidavit of probable cause.

It is not logical to say that a mandatory entry and examination of the cause of a fire is unreasonable. The fact that the statutory investigation may uncover evidence of a crime does not mean that further search becomes constitutionally unreasonable or that evidence obtained thereby is inadmissible.

It is unlikely that before beginning the statutory investigation there would be information as to "probable cause" sufficient to support a search warrant. The Constitution does not say that

there can be no investigation without "probable cause" as to a specific crime when "probable cause" can only be determined by investigation or that when probable cause develops the right to search ends. That would draw too fine a line between investigation and search.

IX. In the case at bar the officers were acting under explicit statutory authority. We find nothing unreasonable or violative of constitutional rights in the statutory procedure. There is no claim of any unnecessary or arbitrary force, subterfuge, coercion or objection.

The accused did not meet the burden of demonstrating that the evidence had been illegally procured.

There is no showing that the search was violative of any constitutional rights or that the evidence is inadmissible on the grounds urged.

The writ of certiorari is sustained, the order of the trial court suppressing the evidence is reversed and the case is remanded to the trial court for entry of an order in harmony herewith.

Writ sustained and case remanded.

GARFIELD, C. J., and MOORE, STUART and MASON, JJ., concur.

RAWLINGS, LARSON, THORNTON and BECKER, JJ., dissent.

RAWLINGS, J.—I concur in Divisions I and II of the majority opinion, but respectfully disagree with the factual analysis, reasoning and conclusions reached in subsequent divisions.

We are here dealing with fundamental constitutional rights of the people and should strive for ways and means by which to not only comply with, but to promote, those all-important safeguards.

We said in Lewis Consol. Sch. Dist. v. Johnston, 256 Iowa 236, 248, 127 N.W.2d 118, 125:

"Perhaps the most efficient form of government is an intelligent and benevolent dictatorship. But, passing the point that such dictatorships rapidly lose their intelligence and benevolence, we must observe that it is not the kind of government provided for by our constitution. Some check must be put upon adminis-

trative bodies; they must be required to follow some sort of pattern designed by the legislature. The law-making body may not entirely abrogate its functions, and surrender them to administrative officials."

By the same token some check must be maintained upon all departments of government. They, as well as administrative officers and agencies, must be required to follow some sort of constitutional pattern. Neither the Constitution of the United States nor of the State of Iowa can be deprived of vitality or meaning by any court, executive or legislative body. No law-making body can by legislative process strip from the people their constitutional rights, privileges and immunities, nor arbitrarily delegate them to some administrative or law enforcement officer. To me this basic precept is at the heart of the case now before us.

The majority opinion takes the position that "the present case is a far cry factually from Mapp." This may be so, but I respectfully submit the interpretations of the Constitution of the United States of America and the legal principles so clearly declared in Mapp are not only in point but are here most persuasive if not controlling.

For good or for bad Mapp is undoubtedly here to stay and we should accord it full and fair consideration.

At the same time there is no alternative but to recognize the self-evident guidelines, force and mass impact of other recent United States Supreme Court decisions such as follows: Stanford v. Texas, 379 U. S. 476, 85 S. Ct. 506, 13 L. Ed.2d 431; Beck v. Ohio, 379 U. S. 89, 85 S. Ct. 223, 13 L. Ed.2d 142; Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed.2d 977; Jackson v. Denno, 378 U. S. 368, 84 S. Ct. 1774, 12 L. Ed.2d 908, 1 A. L. R.3d 1205; Murphy v. Waterfront Commission, 378 U. S. 52, 84 S. Ct. 1594, 12 L. Ed.2d 678; Malloy v. Hogan, 378 U. S. 1, 84 S. Ct. 1489, 12 L. Ed.2d 653; Massiah v. United States, 377 U. S. 201, 84 S. Ct. 1199, 12 L. Ed.2d 246; Fahy v. Connecticut, 375 U. S. 85, 84 S. Ct. 229, 11 L. Ed.2d 171; Haynes v. Washington, 373 U. S. 503, 83 S. Ct. 1336, 10 L. Ed.2d 513; Douglas v. California, 372 U. S. 353, 83 S. Ct. 814, 9 L. Ed.2d 811; Gideon v. Wainwright, 372 U. S. 335, 83

S. Ct. 792, 9 L. Ed.2d 799, 93 A. L. R.2d 733; Wong Sun v. United States, 371 U. S. 471, 83 S. Ct. 407, 9 L. Ed.2d 441; Walton v. Arkansas, 371 U. S. 28, 83 S. Ct. 9, 9 L. Ed.2d 9; Spano v. New York, 360 U. S. 315, 79 S. Ct. 1202, 3 L. Ed.2d 1265; Mallory v. United States, 354 U. S. 449, 77 S. Ct. 1356, 1 L. Ed.2d 1479; and McNabb v. United States, 318 U. S. 332, 63 S. Ct. 608, 87 L. Ed. 819.

The factual situation set forth in the majority opinion is substantially correct, but omits certain important factors. Therefore some repetition of the facts is here unavoidable.

The record in this case is meager, but at the same time, for reasons hereinafter discussed, is probably as complete as defendant could make it.

On August 15, 1964, a fire was reported at 324 Seventh St., S.E., in Cedar Rapids. The fire department responded to a call and extinguished the flames at 5:50 a.m. The building involved was being used as a printing plant operated by Citizen's Publications, Inc., lessee. However, one Joseph W. Grant, Jr., hereinafter referred to as accused, had an interest in the business and occupied an apartment on the premises, this being his sole place of residence.

Immediately after the fire had been put out, the fire chief and his associates, a city electrical inspector, a foreman of the light and power company, a deputy state fire marshal, an agent of the National Board of Fire Underwriters, and others entered the premises for purpose of "investigation", and over a period of weeks reentered the building several times in pursuit of their inquiry. The defendant said no search warrant was ever requested or secured.

Based in part at least upon the evidence obtained by this extended investigation, the Linn County grand jury returned an indictment charging accused with the crime of arson. He was arraigned, entered a not guilty plea, and in due time, prior to trial, filed the subject motion to suppress testimony of grand jury witnesses, Jesse G. Hunter (Chief of Cedar Rapids Fire Department), Kenneth A. Anderson (a fire department captain), James R. Kuta (city electrical inspector), Harry Billings (an employee of Iowa Light and Power Company), and M. D.

Huffman (an agent in the Arson Department of the National Board of Fire Underwriters). By his motion accused requested the court to suppress all evidence gained by these persons as a result of their "investigation" in connection with the fire, *because it was obtained by an unconstitutional search.* This was not denied by the State.

Pursuant to court order there was a hearing on the motion, at which time accused appeared and testified. *Defendant stated his place of residence was on the subject premises; he had an interest in the business there operated; and no search warrant had ever been served on him. The State offered no evidence.* The indictment, with minutes attached, and what is designated a bill of particulars, is made a part of the record for review. The trial court promptly entered order sustaining the motion, the material portion of which provided as follows: "* * * All evidence obtained, and all testimony of witnesses having to do with any search of the premises conducted subsequent to 5:50 a.m. of August 15, 1964, would be, therefore, found to be inadmissible, and such is the Order, Judgment and Ruling of the court upon the motion to suppress."

The foregoing constitutes substantially the whole record before us. I shall return to this later.

I. Mapp v. Ohio, 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed.2d 1081, 84 A. L. R.2d 933, clearly served to impose a strict constitutional ban upon unreasonable searches and seizures as a protection against invasion of privacy, and for security of property, then implicitly placed an equally strict quarantine upon the use in all courts, state and federal, of any evidence secured through any constitutionally prohibited intrusions. See also Fahy v. Connecticut, 375 U. S. 85, 84 S. Ct. 229, 11 L. Ed.2d 171, and State v. Hagen, 258 Iowa 196, 137 N.W.2d 895, 899.

At this point we encounter Frank v. Maryland, 359 U. S. 360, 79 S. Ct. 804, 3 L. Ed.2d 877. In the cited case, 359 U. S. at 365–367, 79 S. Ct. at 808, 809, 3 L. Ed.2d 881, 882, the court said:

"* * * two protections emerge from the broad constitutional proscription of official invasion. The first of these is the right to be secure from intrusion into personal privacy, the right to

shut the door on officials of the state unless their entry is under proper authority of law. The second, and intimately related protection, is self-protection: the right to resist unauthorized entry which has as its design the securing of information to fortify the coercive power of the state against the individual, information which may be used to effect a further deprivation of life or liberty or property. Thus, *evidence of criminal action may not, save in very limited and closely confined situations, be seized without a judicially issued search warrant.*" (Emphasis supplied.)

"But giving the fullest scope to this constitutional right to privacy, its protection cannot be here invoked. *The attempted inspection of appellant's home is merely to determine whether conditions exist which the Baltimore Health Code proscribes.* If they do appellant is notified to remedy the infringing conditions. *No evidence for criminal prosecution is sought to be seized.* Appellant is simply directed to do what he could have been ordered to do without any inspection, and what he cannot properly resist, namely, act in a manner consistent with the maintenance of minimum community standards of health and well-being, including his own. Appellant's resistance can only be based, not on admissible self-protection, but on a rarely voiced denial of any official justification for seeking to enter his home. The constitutional 'liberty' that is asserted is the absolute right to refuse consent for an inspection designed and pursued solely for the protection of the community's health, even when the inspection is conducted with due regard for every convenience of time and place."

"* * * Moreover, the inspector has no power to force entry and did not attempt it. A fine is imposed for resistance, but officials are not authorized to break past the unwilling occupant.

"Thus, *not only does the inspection touch at most upon the periphery of the important interests safeguarded by the Fourteenth Amendment's protection against official intrusion, but it is hedged about with safeguards designed to make the least possible demand on the individual occupant, and to cause only the slightest restriction on his claims of privacy.*" (Emphasis supplied.)

The court did not say an officer may enter the premises of another at anytime, on any pretense, or over the refusal of the occupant to permit peaceable entry, without benefit of a warrant to arrest or to search.

The court simply said a health officer, absent objection by an occupant, may enter a building or go upon property at reasonable times, on reasonable cause, without aid of a warrant for the limited purpose of there making an inspection to ascertain whether conditions are present which do not meet minimum standards and may be dangerous to the health, welfare and safety of the public.

Admittedly statutes and ordinances authorizing such civil inspections have long been acknowledged as incident to the police power of a state or municipality, and thus sanctioned.

So, on the one hand we are confronted with a bar to unreasonable searches, and on the other, a qualified right to enter for health, safety and welfare inspections.

II. Without question our General Assembly may enact any legislation deemed proper, *provided it is not violative of some provision of our State or Federal Constitution*. Bulova Watch Co. v. Robinson Wholesale Co., 252 Iowa 740, 746, 108 N.W.2d 365. And we must, if possible, so construe the state fire marshal law as to avoid finding it, or any portion of it, unconstitutional. Knorr v. Beardsley, 240 Iowa 828, 840, 38 N.W.2d 236. Also we are required to resolve any doubts in favor of constitutionality of all statutes. Town of Mechanicsville v. State Appeal Board, 253 Iowa 517, 527, 111 N.W.2d 317.

As I see it, our task is to harmonize, if reasonably possible, the provisions of chapter 100 and the privacy rights of the people guaranteed by Article I, section 8, Constitution of Iowa, and Amendments 4, 5 and 14, Constitution of the United States.

An examination of our state fire marshal law discloses no provision which automatically directs or authorizes searches and seizures. And, in event this law were to be so construed as to arbitrarily order, direct or permit a criminal investigation in any case, under any circumstances, or to allow such under the guise of civil inspection, then the law would, to that extent, be unconstitutional. *No law can so relax constitutional prohibitions*

*as to permit searches and seizures at the whim and fancy of any
individual.* Mapp v. Ohio, supra; Wong Sun v. United States,
371 U. S. 471, 83 S. Ct. 407, 9 L. Ed.2d 441; State v. Smith,
Ohio Com. Pl., 202 N.E.2d 215, 222; and People v. Cahan, 44
Cal.2d 434, 282 P.2d 905, 906, 50 A. L. R.2d 513. To hold other-
wise would, in effect, serve to so construe chapter 100 as to
authorize a carte blanche general warrant which is clearly pro-
hibited. Stanford v. Texas, 379 U. S. 476, 85 S. Ct. 506, 13 L.
Ed.2d 431.

In Johnson v. United States, 333 U. S. 10, 13, 68 S. Ct. 367,
369, 92 L. Ed. 436, 440, a case involving search of premises
and arrest without a warrant, that court said: "The point of
the Fourth Amendment, which often is not grasped by zealous
officers, is not that it denies law enforcement the support of the
usual inferences which reasonable men draw from evidence. Its
protection consists in requiring that those inferences be drawn
by a neutral and detached magistrate instead of being judged
by the officer engaged in the often competitive enterprise of
ferreting out crime. *Any assumption that evidence sufficient to
support a magistrate's disinterested determination to issue a
search warrant will justify the officers in making a search with-
out a warrant would reduce the Amendment to a nullity and
leave the people's homes secure only in the discretion of police
officers.* Crime, even in the privacy of one's own quarters, is,
of course, of grave concern to society, and the law allows such
crime to be reached on proper showing. The right of officers to
thrust themselves into a home is also a grave concern, not only
to the individual but to a society which chooses to dwell in rea-
sonable security and freedom from surveillance. *When the right
of privacy must reasonably yield to the right of search is, as a
rule, to be decided by a judicial officer, not by a policeman or
government enforcement agent.*" (Emphasis supplied.)

As stated in Frank v. Maryland, 359 U. S. at 372, 373, 79
S. Ct. at 812, 3 L. Ed.2d at 886: "If a search warrant be con-
stitutionally required, the requirement cannot be flexibly inter-
preted to dispense with the rigorous constitutional restrictions
for its issue."

However, if we, in effect, read relevant constitutional pro-

834

visions into our state fire marshal law, then to that extent the law would be constitutional. Appleby v. Farmers State Bank of Dows, 244 Iowa 288, 56 N.W.2d 917, and 16 Am. Jur.2d, Constitutional Law, sections 144–151, pages 345–359.

III. . The matter of civil inspections, and criminal investigations should next be considered.

In its legal sense, a search and seizure is made and effected by entry of an officer into or upon the premises or property of another person and who there, by some force, actual or constructive, seeks out, reaches for, pries into or explores for, and thus physically or mentally obtains, takes, retains and holds the thing or condition so discovered, all with the intent and for the purpose of using such thing or condition in the criminal prosecution of some person or persons. It is a seeking out, a quest for incriminatory evidence. *It may well be classified as accusatory in nature.* It is an invasion of privacy. If effected with legal right, it is reasonable and lawful, but if done without such right, it is unreasonable and unlawful. Mapp v. Ohio, supra; People v. McCracken, 30 Ill.2d 425, 197 N.E.2d 35, 37; State v. Morris, 243 S. C. 225, 133 .S.E.2d 744, 748; Smith v. State, 41 Ala. App. 528, 138 So.2d 474, 476; Bielicki v. Superior Court, 57 Cal.2d 602, 21 Cal. Rptr. 552, 371 P.2d 288, 289; · Commonwealth v. Calvarese, 199 Pa. Super. 319, 185 A.2d 657, 659; State v. Reagan, Mo., 328 S.W.2d 26, 28; and McDonald v. United States, 83 App. D. C. 96, 166 F.2d 957, 958.

On the other hand, a civil inspection as the term is here employed is made and effected by entry of a qualified public official into or upon the premises or property of another person for the limited purpose of there making or effecting an observation only of something there present or some condition which may there exist, which may be inimical to the health, safety and welfare of the community, to the end that some appropriate action or sanction may be had or exercised in order to effect a cure, correction or alleviation of any such condition there found to exist. *Unlike searches, it is investigatory in nature.* Frank v. Maryland, supra; Fagundes v. United States, 1 Cir., 340 F.2d 673; United States v. Barone, 2 Cir., 330 F.2d 543; United States v. Lee, 4 Cir., 308 F.2d 715, 717; People v. Elmore, 28

Ill.2d 263, 192 N.E.2d 219, 220; People v. Manzi, 38 Misc.2d 114, 237 N. Y. S.2d 738, 741; United States v. Scott, 149 F. Supp. 837, 841; and State v. Hawkins, 362 Mo. 152, 240 S.W.2d 688, 692.

IV. Clearly and unmistakably, Mapp said there is a constitutional ban upon *unreasonable searches and seizures*. It would therefore appear that since a good faith lawful civil inspection, so limited, does not stand in the shoes of an unreasonable search and seizure, an officer lawfully upon the premises or property of another, for such purpose, who there sees, observes or becomes aware of self-evident things or conditions, is not prohibited from thereafter giving testimony in a criminal prosecution as to such things or conditions. United States v. Barone; Fagundes v. United States; People v. Manzi; and United States v. Scott, all supra; and United States v. Williams, 6 Cir., 314 F.2d 795, 798.

By the same token, an officer lawfully engaged in fighting a fire, or a duly authorized public official legitimately conducting a good faith post-fire civil inspection upon the premises of another person, should be permitted to employ evidence of self-evident things or conditions in support of an application for a search warrant, and testify as to same in either civil or criminal proceedings.

Briefly stated, it is not a search to merely see, smell, hear, touch or taste that which is plain, obvious, visible, patent or apparent to the senses. United States v. Williams, supra, and Mardis v. Superior Court, 218 Cal. App.2d 70, 32 Cal. Rptr. 263, 267. But see Taylor v. United States, 286 U. S. 1, 52 S. Ct. 466, 76 L. Ed. 951, and People v. Hurst, 9 Cir., 325 F.2d 891.

V. The crucial question presented is whether a person authorized by law to go upon the premises of another to conduct a civil inspection or investigation may at anytime, or on any occasion there undertake a search and seizure.

*In effect the majority opinion holds that when peace officers, administrative agents or others are in a place where they have a lawful right to be for conduct of a civil investigation they are, by the same token in a place where they have a lawful right to be for a search and seizure. This cannot be.*

Despite the contrary view expressed in the majority opinion, I, for one, find it impossible to believe an official acting under authority of chapter 100, having gained entrance to the premises or property of another for the purpose of then and there fighting a fire, or effecting a good faith post-fire civil or administrative investigation, can *ipso facto* convert such fire fighting efforts, or any such investigation into a constitutionally proper search and seizure. Surely an officer so entering or being upon the premises of another person must ordinarily obtain proper consent or valid warrant prior to any search of the premises or possessions of another for the purpose of obtaining evidence incriminatory or accusatory in nature, and particularly so where a dwelling place is involved. United States v. Ventresca, 380 U. S. 102, 85 S. Ct. 741, 744, 13 L. Ed.2d 684; Stoner v. California, 376 U. S. 483, 84 S. Ct. 889, 11 L. Ed.2d 856; Jones v. United States, 362 U. S. 257, 270, 80 S. Ct. 725, 736, 4 L. Ed.2d 697, 78 A. L. R.2d 233; United States v. Jeffers, 342 U. S. 48, 72 S. Ct. 93, 96 L. Ed. 59; Agnello v. United States, 269 U. S. 20, 32, 46 S. Ct. 4, 6, 70 L. Ed. 145; Boyd v. United States, 116 U. S. 616, 630, 6 S. Ct. 524, 532, 29 L. Ed. 746; Mardis v. Superior Court, 218 Cal. App.2d 70, 32 Cal. Rptr. 263, 267; and 47 Am. Jur., Searches and Seizures, section 16, page 512. See also 33 Iowa Law Review 472; 13 Drake Law Review 65; and 36 Colorado Law Review 395.

VI. By this I do not mean consent or a warrant is *always* a prerequisite to a lawful search. The test is reasonableness as to place, time and area, which must be resolved according to the facts and circumstances of each case. Mapp v. Ohio, supra; United States v. Rabinowitz, 339 U. S. 56, 63, 70 S. Ct. 430, 434, 94 L. Ed. 653; Ker v. California, 374 U. S. 23, 33, 83 S. Ct. 1623, 1629, 10 L. Ed.2d 726; and State v. Hagen, 258 Iowa 196, 137 N.W.2d 895, 899. And, fine lines of distinction must usually be drawn requiring a full exploration of the factual situation in each case.

Assuming then that an officer conducting a lawfully proper investigation under chapter 100 is in a place where he has a legal right to be, it would to me logically follow that if while there one or more of his five senses discloses to him *reasonably probable cause to believe a crime has been or is being there committed,* he

may conceivably proceed with a reasonably limited lawful search and seizure without first securing consent or warrant to search. United States v. Rabinowitz, supra; Jones v. United States, 362 U. S. at 269, 270, 80 S. Ct. at 735; United States v. Jeffers, 342 U. S. at 53, 72 S. Ct. at 96; Harris v. United States, 331 U. S. 145, 67 S. Ct. 1098, 91 L. Ed. 1399; Murray v. United States, 10 Cir., 351 F.2d 330, 333, 334; Chapman v. United States, 9 Cir., 346 F.2d 383, 387; People v. Varnadoe, 54 Ill. App.2d 443, 203 N.E.2d 781, 783, 784; and Moreland on Modern Criminal Procedure, page 113.

With reference to probable cause, Brinegar v. United States, 338 U. S. 160, 175, 69 S. Ct. 1302, 1310, 93 L. Ed. 1879, 1890, says:

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.

" 'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' * * * Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has or is being committed."

However, exploratory, repetitive or delayed searches, with or without consent or warrant, have generally been held to be unreasonable. Preston v. United States, 376 U. S. 364, 367, 84 S. Ct. 881, 883, 11 L. Ed.2d 777; United States v. Rabinowitz, 339 U. S. at 61–63, 70 S. Ct. at 433, 434; Kremen v. United States, 353 U. S. 346, 77 S. Ct. 828, 1 L. Ed.2d 876; United States v. Lefkowitz, 285 U. S. 452, 52 S. Ct. 420, 76 L. Ed. 877, 82 A. L. R. 775; McNear v. Rhay, 65 Wash.2d 530, 398 P.2d 732, 739; and State v. Buxton, 238 Ind. 93, 148 N.E.2d 547.

VII. It seems to me to be now well settled that where a motion to suppress evidence is filed, the burden in the first instance is upon an accused to establish his standing as a person

aggrieved by a challenged search, insufficiency of the affidavit for the warrant, or that a search was effected without lawful authority. Wilson v. United States, 10 Cir., 218 F.2d 754, 757, and Williams v. State, Okla. Cr.; 291 P.2d 383. This done the burden is clearly upon the State to show what, if any, civil inspection had been made, the basis or foundation for it, the extent of such investigation, and if a search was in fact made to show proper authority, cause or *reasonableness*. United States v. Hilbrich, 7 Cir., 341 F.2d 555, 559; People v. Allen, 257 N. Y. S.2d 757, 760, 45 Misc.2d 739; and Badillo v. Superior Court, 46 Cal. 2d 269, 294 P.2d 23, 25.

And reasonableness of any search is always for the court to determine. United States v. Rabinowitz, 339 U. S. at 63, 70 S. Ct. at 434, and Ker v. California, 374 U. S. at 33, 83 S. Ct. at 1630.

VIII.  But in the case now before us the showing made may not have been, arguendo, sufficient to permit a fair appraisal and determination of the matter of reasonableness.

Admittedly nothing is shown as to extent of the fire, damage to the structure, its condition after the fire, or whether defendant was or was not present at any material time or times. There is no showing made as to whether the chief of the fire department, and others concerned, conducted a civil investigation and if so their cause or reason, time devoted, and area inspected; and if such investigation was undertaken whether it developed into a search and seizure, and if so why and when, the area searched, and time devoted to it; and whether defendant's living quarters were inspected or searched. *Also no showing is made as to the authority of the five challenged witnesses, or any of them, to investigate or search.* These elements may or may not be essential to a fair determination of defendant's motion, but they are elements which should be disclosed by the State, if disclosed at all.

IX.  The basic thrust of the majority opinion is that *defendant* failed to sustain his burden of proof; that the meagerness of the record is *defendant's* fault; that *defendant* failed to produce all evidence necessary to support his claim or to make his case; and that this is fatal to his motion to suppress.

Actually it would appear defendant produced all evidence

within his limited command. This being a criminal case pretrial discovery was of questionable value to him.

This then means defendant's only real source of information with which to act in support of his motion to suppress was a motion for bill of particulars. But he used this method of approach and was simply told an "investigation" had been repeatedly conducted on the subject premises over a period of about five or six weeks.

The result is, defendant found himself on the horns of a dilemma, but the majority says he did not prove enough,

I cannot agree. Defendant proved he was a person aggrieved; that in truth and in fact four or five people, some with no apparent right or authority, had participated in what can only be classified as repetitive on-the-spot searches, all done without evident authority. This the State neither refuted nor explained.

I am satisfied defendant made his case, that the burden was then upon the *State*, and the *State* failed to meet its burden. Badillo v. Superior Court, 46 Cal.2d 269, 294 P.2d 23. Upon this premise the writ of certiorari should be annulled.

However, it is my belief that both the State and defendant should, as a matter of fairness, be permitted to present such additional testimony and make such further record as is possible and proper.

I believe manifest justice dictates this case be remanded.

LARSON, THORNTON and BECKER, JJ., join in this dissent.